## N. L. HARKNESS v. M. T. HUTCHERSON ET AL.

### Decided February 8, 1897.

1. **Public School Teacher—Discharge.**

A teacher of a public school, discharged without cause, before the expiration of his term of employment, and who has taken no steps to reinstate himself as a teacher, cannot maintain a suit for damages on his contract to teach. Under the act of 1893 (Rev. Stats., art. 3959a) he has a right of appeal from the action discharging him, which must be taken with reasonable promptness or such discharge becomes final, and the contract at an end. Unless reinstated on appeal, he had no cause of action against the trustees. (P. 385.)

2. **Same—Res Judicata—Mandamus.**

When such teacher, though he has not appealed or been reinstated, has recovered a judgment in Justice's Court for damages for his wrongful discharge by the trustees, and demanded a warrant therefor, he is entitled to a writ of mandamus from the District Court to compel the trustees to issue a warrant on the treasurer for the amount,—there being sufficient funds to the credit of the district; the duty is ministerial, and the justice's judgment conclusive of his right to payment. (Pp. 385, 386.)

QUESTIONS CERTIFIED from Court of Civil Appeals, Second District, in an appeal from Hall County. The opinion states the question.

*W. M. Pardue* and *Ben. H. Kelly*, for appellant.—The court erred in sustaining the defendants' general exception, as contained and set out in defendants' original answer, to plaintiff's first amended original petition, because said first amended original petition set forth and contained a good and valid cause of action, and because the defendants herein, as district

trustees of Gammage School District No. 4, County of Hall, State of Texas, composed and constituted a body politic and corporate in law, and were legally empowered to contract and be contracted with, to sue and be sued, and to plead and be impleaded in any court of the State of Texas of proper jurisdiction, and because defendants, as such district trustees, were authorized by law to contract with plaintiff as a school teacher, and were liable under the law for the breach of any contract entered into by them, (as an individual or corporation would be for the breach of its contracts); and after plaintiff had established his right to recover of defendants on a breach of contract, and had obtained judgment against defendants in a court of competent jurisdiction, the court should have proceeded to compel defendants to perform their ministerial duty and issue the school warrant to plaintiff for the amount so recovered, as prayed for in his said first amended original petition. Jester act, General Laws of 1893, sections 52, 53, 54, 55, 57, 84, 85, 86, 87, 88, 89 and 94; Const. U. S., 7th amendment; Nations v. Cudd, 22 Texas, 550; Texas Const. art. 5, sec. 19; Texas Rev. Stats. art. 1539; Fuller v. Brown, 30 S. W. Rep., 506; Bradley v. McCrabb, Dallam, 504; County of Caldwell v. Herbert, 68 Texas, 321; Brown v. Ruse, 69 Texas, 589; Caviel v. Coleman, 72 Texas, 550; Arberry v. Beavers, 6 Texas, 457; Bledsoe v. Railway, 40 Texas, 537; Porter v. Klahn, 1 White and W., C. C., sec. 528.

GAINES, CHIEF JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District submit for our consideration and determination the following statement and question:

"Appellant, on the 1st day of June, 1895, recovered a judgment in the Justice's Court of Precinct No. 1, of Hall County, Texas, for $67.50, against appellees as "District Trustees of Gammage School District No. 4, County of Hall, State of Texas," with interest thereon from date of judgment until paid at the rate of six per cent per annum and $8.65 costs, amounting to $76.15. The judgment was rendered in a suit filed on May 21, 1895, upon a claim for damages occasioned by the trustees in violating a written contract, made by them as such trustees, with appellant as teacher, wherein appellant was to teach the free school of said district for the term of six scholastic months, beginning Nov. 5, 1894, for the sum of $45 per month; the said trustees having dismissed and discharged him as teacher without legal cause and without his consent, before the expiration of his term as fixed in said contract, to-wit, at the end of the third scholastic month, the trustees having paid appellant for the three months he actually taught.

"A check for the amount of the judgment was demanded of the trustees, and they refused to give it; and this suit was filed June 14, 1895, in the District Court of Hall County, setting up all the facts, and praying for a writ of mandamus against the trustees of the said district compelling them, as such trustees, to issue to him the proper check on the treasurer of Hall County to cover the amount of said judgment, interest and costs, alleging that on the 23d day of February, 1895, the day he was discharged,

there was in the hands of said County Treasurer belonging to said district the sum of $135, which had been apportioned to it, and which remained to its credit until the apportionment of the public free school fund for the scholastic year of 1895-6, and that at the date of filing the petition in this case there was on hand in the county treasury to the credit of said school district the sum of $196.64.

"To this suit the defendants filed a general demurrer, which was sustained by the court, and, appellant refusing to amend, his petition was dismissed.

"The questions of law we deem advisable to certify to your honorable court, are:

"1. Whether the teacher, after the expiration of the term of his employment, who has not taught the school and has taken no steps to re-instate himself as teacher, may maintain an action against the school district, or the trustees in their corporate capacity, for the recovery of damages on his contract with the trustees to teach the school, in a case where he is discharged without proper cause before the expiration of his term?

"2. Whether, when he obtains judgment for his damages in such case, he is entitled to a writ of mandamus from the District Court to compel the trustees of the school district to draw their warrant in his favor on the County Treasurer for the amount of such judgment, he having demanded the warrant before applying for the writ, and they having refused to issue it?"

1. At the time the transactions in question took place, the act of May 20, 1893, in relation to public free schools was in force. Section 55 of that act empowered the trustees to employ and to dismiss teachers, but provided that in case of dismissal the teachers should have the right of appeal to the county and State Superintendent. (Laws 1893, p. 198, Rev. Stats. '95, 3959a.) We are of opinion that the effect of a discharge of a teacher by the trustees, is to suspend him and to annul his contract of employment, until the order of dismissal may be set aside by the county or State Superintendent upon appeal. When the appeal is sustained, the result, it would seem, is to restore the teacher and to make his contract good from the beginning. But while the act does not expressly fix any time within which the appeal shall be prosecuted, the public interest demands that it shall be taken without unnecessary delay, and we are satisfied from the very nature of the case, that such was the intent of the Legislature. If action to set aside the order of dismissal be not taken with reasonable promptness, the discharge becomes final and the contract at an end from the date of the order. The law which empowers the trustees to dismiss the teacher became a part of the contract, and gives to it the same effect as if it contained the express condition, that they might discharge him at their pleasure. We conclude, that unless the teacher had been reinstated upon appeal he had originally no cause of action against the trustees; and understanding the first question to apply to a case in which no appeal was taken, we answer it in the negative.

2. The trustees of school communities act under very restricted pow-

ers, and have control of a fund which the law carefully fosters and jealously guards. Yet, among the numerous decisions bearing upon the point, to some of which we have been referred by the court certifying the question, we have found no case which recognizes the doctrine that the trustees of school districts legally organized, who are made quasi bodies politic, are exempt from the rule that public officers may be compelled by the writ of mandamus to perform plain ministerial duties. Besides, we see no good reason why an exception should be made in their favor. That it was not the intention of the Legislature to do so, is shown we think by section 52 of the act above cited, which, by express provisions, makes them "bodies politic and corporate in law," with power to "contract and be contracted with, to sue and be sued, to plead and be impleaded in any court of this State of proper jurisdiction." Clearly, if they may contract and may be sued upon their contracts, judgments for money may be rendered against them, and since mandamus is the only remedy by which such judgments against them can be enforced, it must have been contemplated that they might be compelled by the writ to do the acts required by law in order to secure their payment. Under the Statute the "check" of the trustees upon the County Treasurer is necessary in order to authorize the payment of a claim against the district. (Rev. Stats., art. 3962.) When there is an established claim against the district, it is their duty to draw their "check" in favor of the holder, provided there be funds in the treasury for its payment. A valid judgment upon a legel demand is an established claim. But, as foreshadowed in our answer to the first question, we think that, unless the relator appealed from the order of dismissal and unless that order was set aside, he had no just demand against the district, and that the judgment in his favor in the justice's court was erroneous. This brings us to the question, Can the respondents avail themselves in this action of the defense to the original suit? The justice's judgment, though erroneous, is not void. It is as valid and as conclusive as any other judgment until vacated by an appeal. In a mandamus proceeding to enforce the collection of a judgment, it is conclusive as to all matters that might have been urged by way of defense in the tribunal in which it was entered; and all the authorities we have found so hold. (U. S. v. New Orleans, 98 U. S., 381; Ralls County v. U. S., 105 U. S., 733; Chicago v. Sansum, 87 Ill., 182; State v. Gates, 22 Wis., 210.) In Brownsville v. Loague, 129 U. S., 493, there is a seeming qualification of the rule; but in that case, which was for a mandamus to compel a tax levy to pay a judgment rendered upon coupons to certain bonds, it was merely held that when it is necessary for the relator to go behind his judgment to show authority for a levy of taxes for its payment, and it appears that there was no law authorizing the creation of the debt and none to levy a tax for the particular purpose, a levy will not be compelled.

We answer the second question in the affirmative.