**WESTHEIMER INDEPENDENT SCHOOL DISTRICT, Petitioner,**

v.

**M. L. BROCKETTE, Commissioner of Education of Texas, et al., Respondents.**

No. B–6637.

Supreme Court of Texas.

March 29, 1978.

Rehearing Denied July 26, 1978.

Ross, Griggs & Harrison, James E. Ross, William A. Harrison and Charles W. Kelly, Houston, for petitioner.

1. *Ross v. Houston Independent School District,* Civil Action No. 10,444 in the U.S. District

John L. Hill, Atty. Gen., David M. Kendall, First Asst. Atty. Gen., and Lynn Taylor, Asst. Atty. Gen., Austin, Bracewell & Patterson, William Key Wilde, Kelly Frels and J. Woodfin Jones, Houston, Dixie, Wolf & Hall, Robert E. Hall, Houston, for respondents.

GREENHILL, Chief Justice.

The court is not unmindful of the sweeping judgment of December 8, 1977, by the Federal District Court in Houston, which, in effect, wipes out the Westheimer Independent School District.[1] The basis of that injunction order is that the creation and operation of the district interferes with the desegregation orders of the federal courts under the Fourteenth Amendment to the U.S. Constitution. As will be discussed below, the desegregation questions involving the Westheimer Independent School District have been before the federal courts since 1973, and no such problems are before this court in this case.

What is before this court is the orderly disposition of cases of administrative law. The present suit was instituted by Westheimer Independent School District to obtain an order permanently enjoining the Commissioner of Education, M. L. Brockette, from holding a hearing or taking any other action which would put into question the creation or existence of Westheimer I.S.D. The Houston Independent School District and the Houston Teachers Association intervened and aligned themselves with the Commissioner. After a hearing, the trial court entered a permanent injunction which (1) enjoined the Commissioner from holding any hearing at any time to consider the validity of the creation of Westheimer I.S.D., and (2) prohibited the Commissioner, Houston I.S.D., and the Houston Teachers Association from interfering in any way with the operation of Westheimer I.S.D., except by way of appeal of the court's injunction. The court of civil appeals reformed the trial court judgment so as to permit the parties to file an appeal of the

Court for the Southern District of Texas, Houston Division.

order creating Westheimer I.S.D. in the appropriate district court. As reformed, the trial court judgment was affirmed. 546 S.W.2d 832. We reverse that portion of the judgment of the court of civil appeals which reforms the trial court judgment, and we affirm the judgment of the district court.

## FACTS

On March 21, 1972, the County School Trustees of Harris County entered their order creating Westheimer I.S.D. from the territory of the Spring Branch Independent School District and the Houston I.S.D. While the Houston I.S.D. objected to the new School District, Spring Branch I.S.D. gave its permission for the use of 0.1 of a square mile of its territory, although it has recently attempted to withdraw its consent.

Houston I.S.D. prosecuted an administrative appeal to the Commissioner. The Commissioner reversed the order of the County School Trustees of Harris County. Westheimer I.S.D. then perfected an appeal of the Commissioner's order to the State Board of Education. After a hearing, the State Board of Education, on October 7, 1972, reversed the Commissioner's order and affirmed the order of the County School Trustees of Harris County. Houston I.S.D. has never perfected an appeal from this order of the State Board of Education to the district court of Travis County.

After the above legal actions, the formation of Westheimer I.S.D. was challenged in the federal courts. In 1973 the plaintiffs in *Delores Ross et al. v. Houston Independent School District et al.,* Civil Action No. 10,-444, sought an injunction prohibiting the formation of Westheimer I.S.D. as it impeded the desegregation process in Houston I.S.D. In that action, all parties signed stipulations filed with the court in which

the following was represented as undisputed evidence:

"[T]he administrative procedures prescribed by the State of Texas for the establishment of the Westheimer Independent School District were exhausted and thereupon, pursuant to the statutory law of Texas, the Westheimer Independent School District became established within the following territory in Harris County, Texas. . . . "

On April 4, 1973, the United States Court for the Southern District issued an injunction prohibiting the interim board of trustees of Westheimer I.S.D. from taking any further steps toward creation or implementation of the District until after April 4, 1976, or three years later. On September 8, 1977, the Fifth Circuit Court of Appeals reinstated the injunction for an indefinite period, holding that such action would not interfere with the state administrative and judicial proceedings involved in the instant case.[2]

The federal lawsuit was remanded to the Federal District Court and, as noted above, on December 8, 1977, that court entered a decree which permanently enjoined any further acts relating to the creation and organization of Westheimer Independent School District.

Prior to the renewal of the injunction by the federal courts, further proceedings were being instituted in the state administrative and judicial systems. On March 29, 1976, the board of education of Houston I.S.D. adopted a resolution authorizing the attorneys for Houston I.S.D. to "take whatever steps necessary to prevent the proposed Westheimer Independent School District from being created and from being operational." In July and August 1976, counsel

---

**2.** The Fifth Circuit consolidated Civil Actions Nos. 77–1069, 77–1367, 77–1843, and 77–2281 in rendering its opinion in *Ross et al. v. Houston Independent School District et al.,* 559 F.2d 937 (5th Cir. 1977). In refusing to abstain, the Fifth Circuit made the following statement concerning the relationship between the issues presented in the federal and the state actions:

"No question of comity between the court systems exists. Issues pending before state tribunals are principally, if not exclusively, issues of

state law which have only the most indirect bearing on the resolution of the equitable issues governing the administration of the desegregation process. It is not the intention of this court to reach or to decide any part of these state law issues, and there will be no reason for the district court to do so on remand. The tribunals and officials of the State of Texas are completely free to proceed with the resolution of questions presented to them or to defer or dismiss those proceedings as they may see fit."

for Houston I.S.D. petitioned the County School Trustees of Harris County requesting that the Trustees reverse their 1972 order creating the Westheimer I.S.D. Ten points were raised in support of the petition for reversal; namely:

1. Spring Branch I.S.D. had withdrawn its consent to the detachment of its territory.

2. Testimony at the original hearing was not offered under oath and was not subject to cross-examination.

3. The 1972 order was not supported by findings of fact.

4. The Westheimer I.S.D. "has not been established nor has it begun operation," and a majority of persons now residing in the area have not signed a petition asking for the creation of the proposed District.

5. The County School Trustees of Harris County acted upon erroneous information regarding the boundaries of the Westheimer I.S.D. and created isolated islands of territory not contiguous to the balance of the territory of the Houston I.S.D.

6. There was no administrative or educational justification for the creation of the Westheimer I.S.D.

7. An order of the United States District Court for the Eastern District [*United ed States v. Texas,* Civil Action No. 5281] prohibited the Commissioner and others from approving changes in school boundary lines designed to maintain or encourage a dual school system based upon race.

8. The creation of the Westheimer I.S.D. would have an adverse effect on the ability of the Houston I.S.D. to operate a "unitary school system."

9. A recent survey revealed that a part of the Katy I.S.D. is included within the boundaries of the Westheimer I.S.D.

10. There existed a conflict of interest because the same counsel represented the Spring Branch I.S.D. and the County School Trustees of Harris County.

The County School Trustees of Harris County not only refused to reverse their position, but also refused to grant the request for a rehearing of the matter. Houston I.S.D. then appealed this decision to the Commissioner.

In its appeal to the Commissioner of the denial of a hearing by the County School Trustees of Harris County, Houston I.S.D. asserted the following seven points:

1. The withdrawal of the Spring Branch I.S.D.'s consent to the attachment of 0.1 of a square mile of its territory for use in the creation of the proposed Westheimer I.S.D. renders the creation of the Westheimer I.S.D. void under Section 19.263 of the Texas Education Code.

2. The creation of the proposed Westheimer I.S.D. is impermissible because such creation would isolate portions of the Houston I.S.D. north of Buffalo Bayou, those portions becoming noncontiguous islands many miles from the boundaries of the remaining Houston I.S.D.

3. The proposed Westheimer I.S.D. cannot be allowed to become operational without establishing administrative and educational justifications for its existence. No findings have been made that the proposed Westheimer I.S.D. will be able to provide an equal or higher quality of educational opportunity than is currently being provided by the Houston I.S.D. to the residents of the Westheimer area.

4. The County School Trustees of Harris County failed to give notice of the proposed creation of the Westheimer I.S.D. to the officials and trustees of the Katy I.S.D. and this voids the creation of the proposed Westheimer I.S.D. under Section 19.263(c) of the Texas Education Code. The County School Trustees of Harris County further failed to give the officials and trustees of the Katy I.S.D. an opportunity to be heard on the proposed creation of the Westheimer I.S.D. A portion of the Katy I.S.D. is included within the boundaries of the proposed Westheimer I.S.D.

5. The use of the Spring Branch I.S.D. territory or the territory of other school districts in the creation of the proposed Westheimer I.S.D. would be in violation of a desegregation order of the United States District Court for the Eastern District [*United States v. Texas, supra*] applicable to the Spring Branch I.S.D., the

County School Trustees of Harris County, the Commissioner, and the State Board of Education as related to the change of school boundaries.

6. It would be a violation of the order of the United States District Court for the Eastern District [*United States v. Texas, supra*] to allow the Spring Branch I.S.D. territory to be used in the creation of the proposed Westheimer I.S.D., which would be a virtually all-white district which was created with the intention to discriminate and has the effect of discrimination against minorities. The creation of the proposed Westheimer I.S.D. constitutes a de jure act of racial discrimination and its creation and existence violates the order of the United States district court and the Fourteenth Amendment of the United States Constitution.

7. The creation of the proposed Westheimer I.S.D. would adversely affect the desegregation efforts of the Houston I.S.D. and would impermissively take territory of the Houston I.S.D.

The Commissioner set a hearing for November 4, 1976. Westheimer I.S.D. adopted the position that the Commissioner had no jurisdiction to hear the matter. By letter dated October 19, 1976, to all interested parties, the Commissioner stated: "[A]ll parties should be prepared to offer what evidence they have in respect to any issue of fact or law raised in the Petition for Review and in any answers thereto or other proper pleadings that may then be on file."

On October 18, 1976, Westheimer I.S.D. filed its petition in the instant case in the district court of Travis County seeking a permanent injunction against the Commissioner prohibiting any hearings "related in any way to the creation or existence of the Westheimer Independent School District or otherwise doing any act or thing the effect of which would be to put into question or attempt to put into question the creation or existence of the Westheimer Independent School District." Houston I.S.D. and Houston Teachers Association intervened. With respect to these intervenors, the Westheim-

er I.S.D. prayed "that the relief sought against the Original Defendant, M. L. Brockette, be extended to apply also to the Houston Independent School District [and the Houston Teachers Association], and for such purpose, the Prayer of Plaintiff's Original Petition is incorporated herein by reference, and for such other relief as Plaintiff may show itself justly entitled to receive."

At the hearing in the district court of Travis County, Westheimer I.S.D. introduced into evidence the 1972 order of the County School Trustees of Harris County creating Westheimer I.S.D., the 1972 order of the Commissioner reversing the 1972 order of the Trustees, and the 1972 final order of the State Board of Education affirming the Trustees' order. Westheimer I.S.D. maintained that a hearing by the Commissioner would result in irrevocable injury to it because the hearing would prevent the District from becoming operational and exercising its rights to provide education to the children in the District. Westheimer I.S.D. argued that the Commissioner was acting outside his authority since he could not hold a hearing regarding a final order of the State Board of Education. A former attorney of record for Westheimer I.S.D. and the then-president of the interim board of trustees[3] of the Westheimer I.S.D., testified that these administrative actions created uncertainty regarding the stability and existence of Westheimer I.S.D. and seriously impaired the District's ability to hire personnel, to obtain credit, or to issue bonds, if such bond issuance was necessitated. He acknowledged that Westheimer I.S.D. was not currently in operation and would not be operational until the impediments of further administrative actions were removed. After the hearing, the district court of Travis County entered a permanent injunction and made the following findings of fact and conclusions of law:
"  .   .  .

"I find that the petition for review filed by the Houston Independent School District in July of 1976 comes too late, is

---

**3.** The former attorney of record for the Westheimer I.S.D. and the then-president of the interim board of trustees of the Westheimer I.S.D. will be hereinafter referred to as the "interim president."

improper, is absolutely of no effect, is null and void, confers no authority to the Commissioner to hold any hearing involving the Westheimer Independent School District.

"I find that the Westheimer Independent School District was and is legally created and is entitled to begin operations without further hindrance from anyone.

"I find that unless the Commissioner of Education is enjoined from conducting the hearing concerning Westheimer Independent School District scheduled November 4, 1976, that irreparable injury will result to Westheimer Independent School District and that there is no adequate remedy at law.

"I, therefore, make the following order: that the special exceptions, pleas of jurisdiction and the plea in abatement heretofore filed by the defendants and intervenors in this case are overruled. I also order M. L. Brockette as State Commissioner of Education be enjoined and is enjoined from holding the scheduled hearing on November 4, 1976, involving the Westheimer Independent School District, and that he be further enjoined from holding any hearing at any time to go back into the validity of the creation of the Westheimer Independent School District.

"I enjoin M. L. Brockette, the Houston Independent School District and the Association of Houston Teachers—enjoin them to cease and desist from interfering in any way with the operation of the Westheimer Independent School District, except they may appeal, of course, from the decision of this Court, which I expect, and they may take any action they deem proper in any federal court, which I likewise expect. . . ."

The Commissioner, Houston I.S.D., and Houston Teachers Association appealed the decision of the trial court. The court of civil appeals upheld the injunction issued by the trial court to the extent it prohibited any hearing by the Commissioner. However, the court of civil appeals reformed the injunction to allow a challenge by Houston I.S.D. and others of the validity of West-

heimer I.S.D.'s creation in the appropriate state district court.

All parties have appealed from the judgment of the court of civil appeals. The Commissioner, the Houston I.S.D., and the Houston Teachers Association challenge the issuance of an injunction which prohibits any further administrative hearings involving the Westheimer I.S.D. before the Commissioner of Education. The Westheimer I.S.D. challenges the reformation of the injunction by the court of civil appeals which permits the filing of an additional suit to challenge the validity of the Westheimer I.S.D. in the appropriate district court of this state.

## INJUNCTION PROHIBITING THE HEARING BEFORE THE COMMISSION

■ · It is to be recalled that the Commissioner set a hearing for November 4, 1976, and the Westheimer I.S.D. adopted the position that the Commissioner had no jurisdiction to hear the matter. Houston I.S.D., the Commissioner, and Houston Teachers Association argue that the scheduled hearing before the Commissioner was not a judicially reviewable decision as the administrative remedies had not been exhausted. Courts generally hold that administrative bodies are entitled to and should exercise the duties and functions conferred by statute without interference from the courts. *Texas State Board of Examiners in Optometry v. Carp,* 162 Tex. 1, 343 S.W.2d 242 (1961), citing *Turner v. Bennett,* 108 S.W.2d 967 (Tex.Civ.App.-Beaumont 1937, no writ). It follows, however, that intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers. Specifically, it has been held that when there is an absence of jurisdiction in an administrative agency, then the doctrine of exhaustion of administrative remedies is not applicable. *McFarlin v. State,* 272 S.W.2d 630 (Tex.Civ.App.-Waco 1954, writ ref'd n. r. e.). In the instant case this court must determine whether the injunction issued by the trial court as reformed by the

court of civil appeals constitutes a prohibited interference with the administrative process. Resolution of this issue requires determination of the jurisdiction of the Commissioner to conduct such hearings.

Alternate grounds of jurisdiction of the Commissioner are presented by the parties. First, the Commissioner asserts jurisdiction under powers delegated by statute. Second, Houston I.S.D. argues jurisdiction on the grounds that the Commissioner retains the power to rescind void orders.

■ On the first contention, the Commissioner asserts that the refusal of the County School Trustees of Harris County to hold a hearing to review their 1972 order creating Westheimer I.S.D. is an action reviewable by the Commissioner under Section 11.13(a) of the Texas Education Code:

"Persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees or board of education may appeal in writing to the commissioner of education, who, after due notice to the parties interested, shall hold a hearing and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy."

In the instant case, however, the State Board of Education has issued a final order affirming the order of the County School Trustees of Harris County creating Westheimer I.S.D. Westheimer I.S.D. maintains that neither the County School Trustees of Harris County nor the Commissioner have any jurisdiction to review or rescind such a final mandate of the State Board of Education. The assertion of statutory powers of review by the Commissioner are untenable under the Texas Education Code. The powers of the Commissioner are specifically limited by the actions of the State Board of Education, as provided in Section 11.52(j) of the Texas Education Code:

"The commissioner of education shall observe and execute the mandates, prohibitions, and regulations established by law or by the State Board of Education in accordance with the law."

Moreover, the courts have consistently supported the position that the Commissioner may not review valid orders of the State Board of Education. In *Bevers v. Winfrey,* 260 S.W. 627, 633 (Tex.Civ.App.—Beaumont 1924, no writ), the court held:

"A final order, when made, by the state board of education is binding on all interested parties as fully and as completely as a judgment of a court of competent jurisdiction, and such order must be obeyed in all its terms, unless modified or set aside by an appeal through the courts."

Similarly, in *Lawler v. Castroville Rural High School Dist.,* 233 S.W.2d 613, 616 (Tex. Civ.App.—San Antonio 1950, writ ref'd), the court considered an order by the county board of trustees that changed the site of a school when the previous site had been approved by the State Board of Education:

"The decision of the State Board of Education upon the matter at issue was not subject to being countermanded or set aside by a subsequent order of the local board of trustees. Under certain circumstances, a material change of conditions, such as the destruction of a proposed site, or a substantial shift in population, or some major alteration similar thereto, might authorize a local board to designate another site after action had been taken by the State Board. Under these circumstances the order would be a new one dealing with a different matter from that passed upon by the State Board. . . . It is well settled that in the absence of an appeal to the judiciary and a showing of an abuse of discretion on the part of the State Superintendent and the State Board, the decision of superior administrative authority must be followed."

Herein, the hearing by the Commissioner would constitute, in effect, a review of the 1972 final order of the State Board of Education, rather than a hearing on a new matter. Therefore, a review of the case law and the Texas Education Code supports the holding that the Commissioner does not have jurisdiction to review a valid and final order of the State Board of Education.

As the second or alternative ground of jurisdiction, Houston I.S.D. argues that where the order is void, the Commissioner has jurisdiction to rescind the order. As support for the proposition, Houston I.S.D. cites *Jayton Rural High Sch. Dist. v. Girard Ind. Sch. Dist.,* 157 Tex. 115, 301 S.W.2d 80 (1957); *Magnolia Petroleum Co. v. New Process P. Co.,* 129 Tex. 617, 104 S.W.2d 1106 (1937); and *Lawler v. Castroville Rural High School Dist., supra.* Upon analysis of these cases it is evident the reasoning on which they are based does not apply to the instant case. In *Jayton* the local board was rescinding its own void order, rather than an allegedly void final order of the State Board of Education. *Magnolia* involved the right of review by the Railroad Commission of its own unappealed final order. The court held that the Railroad Commission could review its order even though there were no changed conditions. In contrast to *Jayton* and *Magnolia,* the instant case is not an attempt by a governmental agency to rescind its own final order but is an attempt by a lower administrative office, the Commissioner, to rescind an order of a superior agency, the State Board of Education.

■ On the other hand, the *Lawler* decision is more clearly in point with the instant case. In *Lawler* the court held that a local board of trustees could only modify or change a final order of the State Board of Education if there was a material change of conditions. The problem posed in applying the rule in *Lawler* is determining when allegations present a "material change of conditions." This court holds that a "material change of conditions" shall be narrowly construed, providing a basis for review in only limited circumstances. Such a policy recognizes that there are aspects of administrative orders which must be treated with flexibility, rather than with the binding effects of traditional res judicata. Limited flexibility is necessary to effectively compensate for the summary disposition of many administrative proceedings, the shifting nature of administrative policies, and the inherent problems posed in reaching hybrid administrative-judicial rulings. However, whenever possible the courts should support the finality of administrative orders in keeping with the public policy favoring an end to litigation, whether it be in the administrative or judicial process. Continued litigation of issues or piecemeal litigation should be discouraged. Therefore, to constitute material changes of conditions, the allegations must reflect that the changes have intervened since the rendition of the order and must not constitute issues which might have been raised in the prior hearing had adequate and diligent research been conducted to discover such facts.

■ Herein, Houston I.S.D. argues in its petition of review filed with the Commissioner that conditions have changed. In support of this assertion, it alleges primarily: (1) that Spring Branch I.S.D. has withdrawn its consent to the creation of Westheimer I.S.D.; (2) that a new survey indicates a portion of Katy I.S.D. did not consent; and (3) that the present Westheimer I.S.D. severs a portion of Houston I.S.D. so that it is not adjacent to the remainder of the District. This court holds that all such allegations could have been discovered and presented by Houston I.S.D. at the time of the prior hearings. This holding is impliedly admitted by Houston I.S.D., as it asserts the order was void *ab initio* as a result of these conditions. Thus, Houston I.S.D. is not arguing the existence of material intervening changes of conditions which originated subsequent to the rendition of the order but is asserting conditions existing at the time the order was issued. Therefore, this court holds that absent a showing of material change of conditions intervening since the rendition of the final order of the Board of Education, the Commissioner has no jurisdiction to rescind, countermand or change the order, even should such order have been void *ab initio.*

■ The issue of whether the courts may properly intervene in the administrative process herein is not completely resolved by the determination that the Commissioner did not have jurisdiction to conduct the hearing on the validity of the order. Houston I.S.D. argues that even if the Commissioner did not have the authority to rescind

the final order, he did have the authority to hold a hearing to determine whether he had jurisdiction over the matter. Normally, an administrative body or court would have authority to ascertain whether it had jurisdiction over a matter. *Texas State Board of Examiners in Optometry v. Carp, supra.* However, there is an exception to the rule, enunciated in *City of Dallas v. Dixon,* 365 S.W.2d 919 (Tex.1963), *rev'd sub nom., Donovan v. Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). In *Dixon* the City of Dallas sought a writ of prohibition to stop proceedings in a suit which was relitigating issues resolved in a prior judgment. The Texas Supreme Court reasoned that generally the defensive plea of res judicata is an adequate remedy in a second suit which relitigates issues of the first suit. However, the court held that circumstances may arise wherein the res judicata defense is not adequate, reasoning as follows: [4]

"We should recognize, however, that a plea of res judicata as a defense to a second suit is not an adequate remedy for one holding rights under an appellate court judgment when an actual interference with enforcement of the judgment is coupled with the second suit, or when the mere filing and prosecution of the suit destroys the efficacy of the judgment. In such instances we conceive it to be the duty, as well as the right, of the appellate court to exercise its original jurisdiction to enforce its judgment." 365 S.W.2d 919 at 923.

Therefore, a second suit or hearing may properly be barred where it does no more than relitigate issues *and* where the mere filing of the action or request for a hearing destroys the effectiveness of the prior judgment or order.

Herein, having determined Houston I.S.D. is seeking to relitigate issues which were or could have been presented during the previous hearings, this court must now determine whether the conducting of a hearing by the Commissioner to determine jurisdiction would in any manner destroy the efficacy of the prior order. The effect

of the actions of the State Board of Education was to affirm the order of the Harris County Board of Trustees which authorized the creation of Westheimer I.S.D. Therefore, the order constituted the ultimate administrative step in finalizing the validity of Westheimer I.S.D. Westheimer I.S.D. alleges that the validity of its creation would be clouded by any further hearings before the Commissioner, thereby preventing it from becoming operational. In support of its position, Westheimer I.S.D. argues that in order to become operational it must hire personnel, purchase supplies, and acquire sufficient credit to maintain operating costs. The interim president of the Westheimer I.S.D. testified that these duties are effectively thwarted by the pendency of any administrative review. To further demonstrate how the pending administrative actions cloud the validity or effectiveness of the order of the State Board of Education, Westheimer I.S.D. offered testimony on the effect such an administrative review would have on the issuance of bonds by the District. Bond issuance requires that the bond transcript be approved by the Attorney General. In the trial court hearing an Assistant Attorney General testified that the verification of the legality and validity of the creation of the School District is central to the approval of a bond issue. As a condition of approval, the Attorney General also requires a "no-litigation" certificate. The Assistant Attorney General testified that approval would be withheld if notification was received that administrative proceedings were pending before the Commissioner which in any way involved the validity of a school district. Although the interim president of the Westheimer I.S.D. admitted that Westheimer I.S.D. had no immediate plans to issue bonds, the evidence on bond issuance demonstrates how the validity of the order of the State Board of Education serves as an indication of stability which is relied upon by government certifying agencies, as well as creditors or potential personnel. This

4. *Donovan v. Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), reversed *Dixon* but did not affect this reasoning on relitigation of issues. The reversal in *Donovan* was based upon state court interference in the federal court system.

evidence further illustrates how pending administrative hearings concerning the order negatively affect this essential indication of operational stability.

■ Thus, the mere pendency of a hearing before the Commissioner would cloud the validity of Westheimer I.S.D., would impair its financial standing, and would thwart its functioning in accordance with the duties and responsibilities of a duly created school district. Accordingly, this court holds that a hearing before the Commissioner undermines the efficacy of the order of the State Board of Education. Under the rule enunciated in *Dixon,* it was the duty of the trial court to protect the order of the State Board of Education and to bar all further administrative hearings of any nature before the Commissioner which concern the validity of Westheimer I.S.D. as created by the order. Therefore, such actions of the trial court did not constitute wrongful interference by the courts into the administrative process.

## REFORMATION OF THE INJUNCTION

In addition to enjoining the Commissioner, Houston I.S.D., and Houston Teachers Association from pursuing further *administrative* review of the order creating Westheimer I.S.D., the trial court judgment also enjoined the parties "from interfering in any way with the operation of the Westheimer Independent School District," except by way of appeal of such judgment. The court of civil appeals concluded that the trial court's order precluded the parties from challenging the validity of the school district's creation in the appropriate district court, and the injunction was reformed so as to permit such a challenge. Westheimer I.S.D. argues to this court that the injunction should not have been so reformed, and we agree.

■ In leaving open the possibility of an action in the district court, the court of civil appeals apparently relied on its determination that "the validity *vel non* of the October 7 order was not put in issue in the injunctive proceedings in the district court." 546 S.W.2d at 835. The parties are in dispute before this court as to whether the

issue of Westheimer I.S.D.'s validity has been tried in this case. Westheimer I.S.D. argues that the pleadings, the evidence, and the arguments of counsel show that the issue was tried and resolved in the district court. The Final Order of the district court contains the following finding:

> I find that the Westheimer Independent School District was and is legally created and is entitled to begin operations without further hindrance from anyone.

While this is strong support for Westheimer's position, it is unnecessary for this court to decide whether the issue of the school district's validity was resolved below. Even if such issue was *not* resolved, we hold that it is now too late, as a matter of law, for the parties to file a suit in the district court to challenge the administrative order which created the Westheimer Independent School District.

Section 11.13(c) of the Texas Education Code is the provision giving persons aggrieved by orders of the State Board of Education the right to appeal such orders to the district court in Travis County. When administrative procedures within the state educational system have been exhausted, an appeal under this provision becomes the appropriate method of seeking further review. As discussed at length above, the administrative remedies concerning the creation of Westheimer I.S.D. were exhausted on October 7, 1972, with the final order of the State Board of Education. At that time the parties could have appealed the order to the district court in Travis County. The fact is undisputed that they did not make such an appeal, and they have not done so to this day.

■ Section 11.13(c) of the Texas Education Code does not prescribe a time limit within which an aggrieved party must file an appeal in the district court. However, Texas law is firmly established that, when the statute fails to prescribe such a time limit, an appeal must be taken within a *reasonable* time. *Midas Oil Co. v. Stanolind Oil & Gas Co.,* 142 Tex. 417, 179 S.W.2d 243 (1944); *Board of Water Engineers v. Colorado Municipal Water District,* 152 Tex. 77,

254 S.W.2d 369 (1953); *Railroad Commission v. Aluminum Company of America,* 380 S.W.2d 599 (Tex.1964); *Harkness v. Hutcherson,* 90 Tex. 383, 38 S.W. 1120 (1897). There is ample authority for holding that the undisputed delay in this case is unreasonable as a matter of law.

The decision most frequently cited in support of this type of holding is *Board of Water Engineers v. Colorado Municipal Water District,* 152 Tex. 77, 254 S.W.2d 369 (1953). That case involved a seven month delay in appealing an administrative order creating a water district. In declaring the order invalid, the trial court impliedly found that the delay in bringing the appeal was not unreasonable. This court set aside the trial court judgment and dismissed the case, holding that the facts demonstrated an unreasonable delay as a matter of law. Among the factors persuasive to the court were the fact that the parties tacitly recognized the district's existence and the fact that the parties could have filed and prosecuted their appeal immediately after the order was entered. In the present case, the parties' recognition of Westheimer I.S.D.'s existence was more than tacit. Counsel for both parties represented to the Federal Court in 1973 that,

> the administrative procedures . . . for the establishment of the Westheimer Independent School District were exhausted and . . . the Westheimer Independent School District became established.

It was at least partially in reliance on this stipulation that the Federal Court issued its injunction. And, as noticed above, the parties in this suit could well have prosecuted their appeal in 1972 when the order was entered.

Another significant case is *Railroad Commission v. Aluminum Company of America,* 380 S.W.2d 599 (Tex.1964), in which this court was faced with what was, in effect, an attempt in 1960 to appeal orders entered by the Railroad Commission in 1956. The trial court and the court of civil appeals had sustained the attack on the orders and enjoined their enforcement. This court reversed the judgments below and sustained the Railroad Commission's contention that the evidence showed, as a matter of law, that the appeal was barred by unreasonable delay. The court stated the rule that one appealing from any order of the Railroad Commission must proceed with reasonable diligence, and Alcoa was held to have a right to seek revision of the orders *only* upon a showing of changed conditions. As this court has done earlier in the present opinion, the court in the *Alcoa* case determined that the allegations relating to changed conditions were matters that could have been raised at the time of the original hearing. Public policy was viewed as prohibiting judicial interference with the long-standing orders of the Railroad Commission.

A holding quite similar to that in the *Alcoa* case is *Pan American Petroleum Corp. v. Railroad Commission,* 335 S.W.2d 425 (Tex.Civ.App.—Austin 1960, writ ref'd n. r. e.). In 1959 the Railroad Commission entered an order refusing to revise certain allocation formulas that had been fixed in 1956. Upon Pan American's appeal of the Commission's order, the Commission argued that Pan American's failure to take prior legal action to set aside the 1956 orders was an unreasonable delay as a matter of law. The court of civil appeals agreed, noting, "There is no dispute as to the relevant facts in the time and sequence in which the events occurred." 335 S.W.2d at 428. Similarly, there is no dispute in the present case that the order which the parties would be attacking, if a suit were filed in the district court, was entered in October of 1972. Thus a delay of more than five years would necessarily be involved.

Other decisions which have held a delay in appealing an administrative order to be unreasonable as a matter of law include *Combs v. State,* 526 S.W.2d 648 (Tex.Civ. App.—Austin 1975, writ ref'd n. r. e.). The court in that case held, "Appellant's delay of three years, three months, and eighteen days from the date of the entry of the special order to the date of filing of his petition in the district court is, as a matter of law, unreasonable." 526 S.W.2d at 651. Another example is *Heaberlin v. Joaquin Independent School District,* 95 S.W.2d 1339

(Tex.Civ.App.—Beaumont 1936, no writ), which involved an appeal to a county school superintendent from an order dismissing the appellants from their teaching positions. The court held, "The attempted appeal of appellants 150 days after the order of dismissal was, as a matter of law, an unreasonable delay, came too late, and the refusal of the county superintendent to consider same was correct." 95 S.W.2d at 1341. Finally, the following language in the court of civil appeals' opinion in the *present* case should be noted:

"Though Tex.Educ.Code Ann. § 11.13(c) fixes no time limit during which the aggrieved party must file an appeal, such an appeal must be brought within a reasonable time. [citations omitted]. The order of the State Board of Education is now final because a delay of four years is, as a matter of law, unreasonable."

While the court's conclusion following this holding was that further administrative proceedings were precluded, § 11.13(c) is the provision for appeals to the *courts*; the holding should also preclude further *judicial* proceedings.

In addition to cases in which the courts have found unreasonable delays as a matter of law, there are a number of holdings which have upheld trial court findings of unreasonable delay. In *Midas Oil Co. v. Stanolind Oil & Gas Co.*, 142 Tex. 417, 179 S.W.2d 243 (1944), this court held that, in light of a jury finding that four months was an unreasonable delay, the party had lost its right to prosecute a suit to set aside a Railroad Commission order. In *Red Arrow Freight Lines v. Missouri-Pacific Freight Transportation Co.*, 166 S.W.2d 747 (Tex.Civ.App.—Austin 1942, writ ref'd), a trial court finding that nine months was an unreasonable delay was upheld. Similar holdings have been made in cases involving appeals from decisions of school system officials. For example, in *Watkins v. Huff*, 63 S.W. 922 (Tex.Civ.App.1901, writ dism'd 94 Tex. 631, 64 S.W. 682), the court sustained the trial court's finding that a two week delay in appealing a decision of the state superintendent of public education was too long. Other cases which have given indications as to what is an unreasonable

delay in appealing decisions of school system officials are *Harkness v. Hutcherson*, 90 Tex. 383, 38 S.W. 1120 (1897) (four months); *Los Angeles Heights Independent School District v. Chestnut*, 287 S.W. 693 (Tex.Civ.App.—San Antonio 1926, no writ) (two weeks); and *Bear v. Donna Independent School District*, 85 S.W.2d 797 (Tex.Civ.App.—San Antonio 1935, writ dism'd) (eight months).

In the present case, the trial court made the following findings with reference to the State Board of Education's order of October 7, 1972:

I find that the order has not been appealed from within the time provided by statute and has not been appealed from under the provisions of Article 11.13 of the Education Code.

I find that the petition for review filed by the Houston Independent School District comes too late. . . . . .

These holdings, though termed "findings of law," demonstrate at least an implied finding by the trial court that the parties had delayed unreasonably in seeking further administrative review of the order in question. The same rationale which leads to such a conclusion by the trial court also leads inevitably to the conclusion that it is now too late to bring an appeal to the courts. This result is demanded by the strong public policy favoring an end to litigation. There are rarely circumstances which would justify an appeal, in 1978 or later, from an administrative order entered in 1972; and the record before us adequately demonstrates that such circumstances are not present in this case.

The judgment of the court of civil appeals is reversed, and the judgment of the district court is affirmed.

JOHNSON, Justice, dissenting.

This dissent is respectfully submitted.

This writer has no argument with that portion of the majority opinion entitled "INJUNCTION PROHIBITING THE HEARING BEFORE THE COMMISSIONER" which holds that the administrative remedies concerning the validity of the cre-

ation of Westheimer Independent School District have been exhausted.

However, this writer disagrees with that portion of the opinion entitled "REFORMATION OF THE INJUNCTION" in the strongest possible terms. The majority states that it is "not unmindful" of the judgment of the federal district court in *Ross v. Houston Independent School District.*[1] Neither should this court be unmindful that appeal might be made from the federal district court's judgment with the ultimate result being wholly unknown. The federal district court did make certain findings, however, and among them was the determination that the "formation of WISD would be a major step towards the creation of a deteriorating central city" and that "[t]he formation of WISD and its continued existence have been motivated by and are still motivated by a demonstrated discriminatory purpose."

The majority opinion in the instant case, coupled with a reversal of *Ross v. Houston Independent School District, supra,* by the Fifth Circuit Court of Appeals, would implement the results so graphically described by Federal District Judge Cowan. This court cannot blind itself to those results by asserting that the instant case presents nothing more than "the orderly disposition of cases of administrative law."

The majority holds that Houston Independent School District may not challenge through judicial appeal the validity of the order creating Westheimer Independent School District because Houston I.S.D. has *as a matter of law* delayed in bringing such appeal for an unreasonable time. The majority asserts "[t]here is ample authority for holding that the undisputed delay in this case is unreasonable as a matter of law." This writer submits that (1) the majority opinion has no basis; it is altogether premature and unsupported; (2) *all* the authority, including each and every case cited by the majority, is to the contrary of the majority holding; and (3) Westheimer Independent School District brings no point of error before this court, and indeed makes no contention before this court, justifying or supporting the majority determination.

### THE MAJORITY OPINION HAS NO BASIS—IS PREMATURE AND UNSUPPORTED

The majority has determined that the courts do not have jurisdiction to hear *an appeal* from the administrative order creating Westheimer I.S.D. because the parties have delayed their appeal for an unreasonable period of time as a matter of law. The majority holding has no basis; it is premature and unsupported for the elementary reason that this court does not have before it *an appeal* of the order creating Westheimer I.S.D  What this court does have before it is the request that the court affirm or reverse a *permanent injunction* which is predicated *solely* on a determination that the administrative remedies have been exhausted.

In its simplest terms, the instant case was brought in the district court by Westheimer I.S.D. to obtain an injunction prohibiting the Commissioner of Education, Houston I.S.D., and Houston Teachers Association from conducting further hearings concerning the creation or existence of Westheimer I.S.D. The district court issued a broad injunction prohibiting further administrative or judicial proceedings which would interfere with the operation of Westheimer I.S.D. The court of civil appeals reformed the injunction, narrowing its scope to the issues actually before the court and limiting its prohibition to administrative remedies only; by so doing, the court of civil appeals permitted a possible future appeal to the district court challenging the creation of Westheimer I.S.D. *Such an appeal has not as yet been instituted.* Accordingly, this court should only be considering the merits and scope of the injunctive order.

Any resolution of the jurisdictional questions that might arise if the order creating Westheimer I.S.D. were appealed is not only premature at this time, but also unsupported by the factual or legal development

1. *Ross v. Houston Independent School District,* Civil Action No. 10,444, —— F.Supp. —— in the U.S. District Court for the Southern District of Texas, Houston Division.

of the instant cause of action. *There is no appeal of the order creating Westheimer I.S.D. involved in the instant cause of action.* No party pleaded the issue of validity or invalidity of the order creating Westheimer I.S.D. The petition of review, which was filed with the Commissioner by Houston I.S.D., was placed into evidence in the trial court by Westheimer I.S.D., not by Houston I.S.D. or other parties opposing the creation of Westheimer I.S.D. Although such petition of review alleges possible jurisdictional deficiencies in the creation of Westheimer I.S.D., the petition was utilized by Westheimer I.S.D. to show the nature of the jurisdiction being invoked by the Commissioner, not to show the accuracy of the allegations therein. Furthermore, the issue was not tried by consent as there was no development of the evidence to prove or disprove the question of validity. For example, no party introduced evidence to document the allegation in the petition of review that Katy I.S.D. had not been given notice or that territory in Katy I.S.D. was now included in Westheimer I.S.D. In addition to the general failure to plead or to prove elements concerning the validity of Westheimer I.S.D., the absence of the issue was established by the admissions of counsel and interested witnesses that the *only* ruling being sought in the trial court was the determination of whether administrative remedies had been exhausted. Therefore, a review of the pleadings, evidence, testimony, and arguments of counsel clearly demonstrates that *this court is not presented with an appeal to the courts of an administrative order.*

Accordingly, a determination that there has been an unreasonable delay as a matter of law in bringing an appeal is a judgment which goes beyond the matter in dispute *in the trial court.* Furthermore, the jurisdictional issue has not been raised *in this court. None of the parties ask this court to rule the delay unreasonable as a matter of law; nor do they direct this court to any of the authority relied upon by the majority in ruling the delay unreasonable as a matter of law.* Therefore, by ruling on the jurisdictional issue the majority has decided an issue not asserted by any party at any time

during these proceedings. More significantly, the majority would proclaim such ruling to be dispositive of this case.

For the majority to so rule is to act prematurely and to overreach this court's authority in the instant cause of action. *Oil Field Haulers Ass'n v. Railroad Commission*, 381 S.W.2d 183 (Tex.1964); *Radcliff v. Clemons*, 265 S.W.2d 182 (Tex.Civ.App.— Galveston 1954, writ ref'd n. r. e.), citing 4 McDonald, Texas Civil Practice § 17.27; Tex.R.Civ.P. 301. The resolution of this jurisdictional question should only be resolved by a state court presented with the judicial appeal of the order creating Westheimer I.S.D. after development of all the necessary issues and evidence.

## THE MAJORITY OPINION IS CONTRARY TO CONTROLLING AUTHORITY

Not only has the majority made a determination without basis and prematurely considered the issue of timely appeal from an administrative order, but in so doing it has determined the issue contrary to controlling authority, including those decisions upon which the majority relies. At the outset it must be noted that this is a case for which there is no timetable for appeal or limitation period applicable by statute. In such cases the courts have refrained from imposing arbitrary time limitations and have held that such cases will be governed by the more flexible standard which sanctions appeals prosecuted within a reasonable period of time. Nevertheless, the majority adheres to the rote application of time limitations and holds that the time element is the only factor to be considered in determining whether a delay to appeal an administrative order is unreasonable. The courts of this state, however, have consistently held that the time factor is *only one* of the elements to be considered in determining whether the delay was unreasonable.

The supreme court in *Midas Oil Co. v. Stanolind Oil & Gas Co.*, 142 Tex. 417, 179 S.W.2d 243 (1944), established the principle that in the absence of a specific timetable

for appeal, appeals from administrative orders must be brought within a *reasonable time*. The court in *Midas* held that a determination of whether a delay is reasonable or unreasonable depends upon the circumstances of the case and *is a fact question* to be resolved by the jury or the trier of fact. The *Midas* court specifically discussed the types of circumstances that the court deemed significant in determining the reasonableness of delay in appealing an administrative order: (1) the need for immediate action or implementation by the party relying upon the order; and (2) harm to the party relying upon the order caused by the delay in appeal. Basically these guidelines establish an estoppel theory whereby *facts* must exist which not only constitute a delay, but also demonstrate that the party relying upon the order would be harmed by the delay in appealing the administrative order. *Humble Oil & Refining Co. v. Trapp*, 194 S.W.2d 781 (Tex.Civ.App.—Austin 1946, writ ref'd).

Neither the holding nor the principles established in *Midas* have been overruled. Quite the contrary, *Midas* is consistently cited as controlling and its principles were followed explicitly by the courts in *Board of Water Engineers v. Colorado River M.W. Dist.*, 152 Tex. 77, 254 S.W.2d 369 (1953), *Combs v. State*, 526 S.W.2d 648 (Tex.Civ.App.—Austin 1976), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976), and *Pan American Petroleum Corp. v. Railroad Commission*, 335 S.W.2d 425 (Tex.Civ.App.—Austin 1960, writ ref'd n. r. e.). These are three of the very cases relied upon by the majority. These cases, as well as the courts in *Railroad Commission v. Aluminum Company of America*, 380 S.W.2d 599 (Tex.1964), and *Red Arrow Freight L. v. Missouri-Pacific Fr. Transp. Co.*, 166 S.W.2d 747 (Tex.Civ.App.—Austin 1942, writ ref'd), have determined that a delay is unreasonable only after extensive development and consideration of all the attending facts.

As previously noted, there is no timetable for appeal or limitation period found in the statute or elsewhere which is applicable to the Commissioner of Education in this case. Nevertheless, the majority cites two cases which involve thirty-day limitation periods for appeal. Both *Heaberlin v. Joaquin Independent School Dist. No. 38*, 95 S.W.2d 1339 (Tex.Civ.App.—Beaumont 1936, no writ), and *Bear v. Donna Independent School Dist.*, 85 S.W.2d 797 (Tex.Civ.App.—San Antonio 1935, writ dism'd), involved specific regulations of the superintendent of education which provide that an appeal should be brought within thirty days after the issuance of the order. It is one thing to say that a delay in appealing an administrative order is unreasonable as a matter of law when a specific thirty-day limitation period has been violated; it is another matter entirely to hold an appeal untimely *as a matter of law* when the uniform and consistent holding of the courts of this state, including this court, is that unreasonableness is determined as a *matter of fact*, by the trier of fact, and after all the facts are developed.

The majority has ruled that the delay in appealing is unreasonable as a matter of law without permitting the parties any opportunity to develop the fact questions concerning whether the order creating Westheimer I.S.D. was immediately relied upon and whether the delay to appeal would cause harm to Westheimer I.S.D. or the public. Indeed, the undeveloped record before this court raises fact questions concerning these issues which wholly preclude any ruling as a matter of law. It is to be recalled that Westheimer I.S.D. initially received a favorable ruling from the State Board of Education. Nevertheless, Westheimer I.S.D. was not in a position to act immediately upon receiving the ruling from the State Board of Education since it was faced with an injunction ordered by the federal court which prohibited the implementation of the order creating Westheimer I.S.D. for three years. It is noted, parenthetically, that Westheimer I.S.D. made no appeal from such injunction. As Westheimer I.S.D. was not and, of course, could not be operational during these three years, what possible harm was being suffered during this interim period? It is, at the very least, arguable that no additional harm would be suffered by the prosecuting of an

appeal after the injunction was lifted. These circumstances unquestionably present fact issues concerning the reasonableness of the delay which should be presented to a jury or a fact finder in order to determine whether Houston I.S.D. is barred from judicially appealing the order of the State Board of Education. In the instant case this court has before it very limited evidence produced at a hearing on a permanent injunction concerning administrative remedies. Such evidence is abbreviated and in no way develops those facts essential to a determination of the estoppel principles governing whether a delay to appeal is unreasonable. Therefore, the instant record is wholly inadequate for a fair determination of the jurisdictional issues which may arise if the order creating Westheimer I.S.D. is appealed to a state court.

### THE MAJORITY OPINION IS UNRELATED TO WESTHEIMER I.S.D.'s POINTS OF ERROR

The majority has reversed the court of civil appeals on grounds which were not asserted by any party in written briefs or urged by any party during oral argument. Westheimer I.S.D. is the party objecting to the reformation of the injunction which allows future judicial appeal of the order creating the School District. In its points of error concerning the reformation of the injunction, Westheimer I.S.D. alleges several theories of error; *i. e.*, estoppel by judgment, res judicata, collateral attack, statute of limitations, and compulsory counterclaim. However, at no point has Westheimer I.S.D. urged this court to rule the delay to appeal unreasonable as a matter of law, nor does Westheimer I.S.D. cite any of the authorities relied upon by the majority in so ruling. The majority, therefore, in straining to reach the result herein obtained has gone beyond the points of error urged by Westheimer I.S.D. and indeed beyond the scope of *any* contention made by Westheimer I.S.D. in its briefs or otherwise.

The majority maintains that its decision is based upon Westheimer I.S.D.'s unbriefed argument that there should be an end to litigation and upon the "strong public policy favoring an end to litigation." Each of these theories is meritorious when utilized in a cause of action which properly develops the issues and facts to support the application of such principles. Unfortunately, this court does not have before it such development of the instant case. Public interest and public policy are not static and readily definable, but are, as a rule, relative to the issues and interest developed in a controversy. The parties herein have not been afforded an opportunity to plead or prove the harm caused by the delay in appealing, nor has there been any proof that public interest demands that this delay be held unreasonable. On the contrary, when extensive evidence was presented to the federal district court there appeared to be adequate evidence that the public interest demanded that the formation of Westheimer I.S.D. be reviewed as it constituted a serious "socio-economic threat."

Accordingly, this writer would affirm the judgment of the court of civil appeals which permits a possible future challenge to the validity of the creation of Westheimer I.S.D. in an appropriate state district court.

Justices STEAKLEY and DENTON, join in this dissent.