The **NEW JERSEY ZINC COMPANY, A DIVISION OF GULF & WESTERN INDUSTRIES, INC.,** Plaintiff-Appellee,

v.

**COLORADO MINED LAND RECLAMATION BOARD;** Colorado Mined Land Reclamation Division; David C. Shelton, as Director, Colorado Mined Land Reclamation Division; Colorado Department of Natural Resources; and Battle Mountain Corporation, Defendants-Appellants.

No. 85CA0758.

Colorado Court of Appeals,
Div. II.

April 16, 1987.

Sherman & Howard, Craig R. Maginness, Theodore E. Worcester, Ronald M. Eddy, Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert A. Hykan, Linda E. White, Asst. Attys. Gen., Denver, for State defendants-appellants.

Brightwell, Reeves & Alderfer George E. Reeves, Denver, for defendant-appellant Battle Mountain Corp.

KELLY, Judge.

In this appeal from the district court's review of an administrative action, the defendants, Colorado Mined Land Reclamation Board, Colorado Mined Land Reclamation Division, David C. Shelton (as Director of the Division), Colorado Department of Natural Resources, and Battle Mountain Corporation, contend that the trial court erred in ordering the Board to transfer a mine operator's permit from the plaintiff, New Jersey Zinc Company, to Glenn T. Miller or to Battle Mountain Corporation.

The state defendants contend that the trial court erred in ruling that the Board had been arbitrary and capricious in denying the transfer. They also argue that the court erred in ordering the Board to grant the permit retroactively and to exchange New Jersey Zinc's $300,000 financial warranty for that of Glenn T. Miller, who is not a party to this appeal. We disagree with these contentions.

Battle Mountain contends that the trial court erred in holding that it was a proper party to the action in the district court and in remanding the case for the Board to determine whether to transfer the permit jointly to Miller and Battle Mountain. We agree with these arguments and thus, we affirm in part and vacate in part.

In 1978, New Jersey Zinc obtained an operator's permit pursuant to the Colorado Mined Land Reclamation Act. Section 34–32–101, et seq., C.R.S. (1984 Repl.Vol. 14). As required by the Board, New Jersey Zinc filed a $300,000 bond to guarantee performance of its reclamation obligations.

In September 1983, New Jersey Zinc's parent company sold the entire mining interest to Miller, who, on the same date, conveyed a portion of his interest to Battle Mountain. Miller and Battle Mountain entered into an agreement whereby Miller was responsible for all mining operations on the property. Miller then applied to the Board to have the reclamation permit transferred from New Jersey Zinc to him.

At a hearing on October 26, 1983, the Board unanimously approved the transfer of the permit which was to be effective when Miller posted his own $300,000 financial warranty. He filed a corporate security bond on April 6, 1984; however, the Board did not transfer the permit and release New Jersey Zinc's $300,000 financial warranty. Initially, the Board stated as its grounds that Miller had not provided a correct legal description of the property along with the application. However, Miller was not required to do so since New Jersey Zinc had given such a document to the Board several years before.

After the Board initially decided to transfer the permit in October 1983, it received information indicating that Miller was in financial straits. Armed with the new information, the Board held another hearing on June 28, 1984, and voted to withhold the permit succession until Miller posted a $1,566,000 financial performance warranty, rather than the $300,000 bond he had posted earlier. Miller did not submit the higher warranty; thus, New Jersey Zinc was left holding the operator's permit with its $300,000 bond still unreleased by the Board. Although it sent a representative to the June 28 hearing, Battle Mountain was not a named party, nor did the agency action make any reference to it.

New Jersey Zinc then filed suit for judicial review of the Board's action. New Jersey Zinc asked the trial court to order the Board to transfer the permit effective October 27, 1983, the date it originally approved the succession. The trial court ruled, instead, that the permit was trans-

ferred as of April 6, 1984, when Miller posted his $300,000 bond. The trial court also held that Battle Mountain was a proper party and remanded the matter to the Board to determine which parties should hold the permit.

The defendants then filed this appeal.

## I.

The state defendants contend that the Board acted within its authority in delaying transfer of the permit until Miller submitted the $1,566,000 bond and that, therefore, the trial court erred in ruling that the permit was transferred when Miller posted his $300,000 bond. We disagree.

If a trial court, after reviewing final agency action, finds that the decision was arbitrary and capricious, it shall hold the agency action unlawful, "and compel any action to be taken which has been unlawfully withheld or unduly delayed...." Section 24-4-106(7), C.R.S. (1982 Repl.Vol. 10). Where one mine operator succeeds another, "the [B]oard shall release the first operator from all liability," together with its financial warranties, if the successor operator assumes all of the former's obligations. Section 34-32-119, C.R.S. (1984 Repl.Vol. 14). The Board determines the type and amount of warranties which the successor operator must furnish before final approval of the succession. Section 34-32-117, C.R.S. (1984 Repl.Vol. 14).

Once it determines that the successor operator has met the transfer requirements, the Board must complete action on the application *within 120 days* or the permit "shall be considered to be approved and shall be promptly issued upon presentation by the applicant" of the financial warranty. Section 34-32-115, C.R.S. (1984 Repl.Vol. 14). Use of the word "shall" in a statute is presumed to carry a mandatory connotation. *People v. Clark*, 654 P.2d 847 (Colo. 1982); *Swift v. Smith*, 119 Colo. 126, 201 P.2d 609 (1948).

■ Unless prohibited by statute, a government licensing agency may modify its decision to grant or transfer a permit to rectify errors or to alter its rulings on the basis of newly discovered evidence, but the modification must be for good cause and *it must be within any statutory time limits.* *See Chapman v. El Paso Natural Gas Co.*, 204 F.2d 46 (D.C.Cir.1953); *Western Air Lines, Inc. v. Civil Aeronautics Board*, 194 F.2d 211 (9th Cir.1952); *Duvin v. State Department of Treasury*, 76 N.J. 203, 386 A.2d 842 (1978). Where natural resources are to be protected by the agency, it should be encouraged to rectify any errors so long as the modification is not prohibited by statute. *Michigan Oil Co. v. Natural Resources Commission*, 71 Mich. App. 667, 249 N.W.2d 135 (1976), *cert. denied*, 444 U.S. 980, 100 S.Ct. 482, 62 L.Ed.2d 407 (1976). Any modification so allowed must be based on facts which could not have been discovered before the original decision was rendered. *Westheimer Independent School District v. Brockette*, 567 S.W.2d 780 (Tex.1978).

The record establishes that, pursuant to § 34-32-119, C.R.S., Miller filed his request for transfer of the permit on October 24, 1983. On October 26, the Board unanimously approved the transfer subject only to Miller's filing of the $300,000 warranty, which he posted on April 6, 1984.

■ The 120-day time period within which the Board could reconsider its approval expired on February 21, 1984. Accordingly, as specified in § 34-32-115, C.R.S., the permit was considered to be automatically approved when Miller posted the bond on April 6, 1984.

■ Furthermore, the record also establishes that, before the 120 days had expired, the Board already had some of the evidence upon which it based its reconsideration; therefore, it cannot, on appeal, maintain that it should have been allowed to reconsider its decision almost three months after Miller posted the financial warranty. *See Westheimer Independent School District v. Brockette, supra.* Thus, the trial court correctly held that April 6, 1984, was the effective date of transfer and that the Board's action was arbitrary and capricious in that it had unduly delayed transfer of the permit. Section 24-4-106(7), C.R.S. (1982 Repl.Vol. 10).

## II.

Battle Mountain contends that the trial court erred in holding that it was a proper party to the agency proceedings. We agree.

 Any person who may be affected or aggrieved by agency action must be admitted as a party upon its request, or it may be admitted as a party for any limited purpose. Section 24-4-105, C.R.S. (1982 Repl.Vol. 10). Unless an agency has adjudicated the rights of a person who is also a party, a district court reviewing the agency action has no authority, *sua sponte*, to enter its own findings and conclusions with regard to that person. *See Colorado Department of Revenue v. District Court*, 172 Colo. 144, 470 P.2d 864 (1970). Individual licensing and permit decisions involving factual adjudication are subject to the statutory due process procedures. *City & County of Denver v. Eggert*, 647 P.2d 216 (Colo.1982).

Battle Mountain was never a party to the Board's proceedings. Miller applied for the succession of permit and posted the financial warranty without any reference or recourse to Battle Mountain. At the October 26, 1983, hearing, the Board approved Miller's application with no consideration of Battle Mountain's involvement. It was not a party at the hearing on June 28, 1984, and the administrative record indicates that the Board had no intention to make Battle Mountain a party to the adjudication proceedings. Thus, the trial court exceeded its authority in ruling that Battle Mountain was a party. *See Colorado Department of Revenue v. District Court, supra.*

In view of our ruling, it is unnecessary to consider New Jersey Zinc's allegation that Battle Mountain was involved with Miller in some form of a venture or other association that would have made it a necessary and proper party.

The trial court's finding that the succession of permit was effective on April 6, 1984, is affirmed; that part of the trial court's decision which remanded the case to the Board to decide whether the permit should be transferred jointly to Miller and Battle Mountain Corporation is vacated; and the matter is remanded to the trial court to order the Board to transfer the permit to Miller effective April 6, 1984, and to release New Jersey Zinc's warranty.

SMITH and STERNBERG, JJ., concur.