## CYPRESS–FAIRBANKS INDEPENDENT SCHOOL DISTRICT, et al., Appellants,

v.

## TEXAS EDUCATION AGENCY, et al., Appellees.

No. 3–89–197–CV.

Court of Appeals of Texas, Austin.

Sept. 19, 1990.

Rehearing Overruled Oct. 31, 1990.

John T. Fleming, Henslee, Ryan & Groce, Ted Mishtal, Clark, Thomas, Winters & Newton, Austin, for appellants.

Jim Mattox, Atty. Gen., George Warner, Asst. Atty. Gen., Austin, for Texas Educ. Agency and William N. Kirby, Com'r of Educ.

Jefferson K. Brim, III, Mark W. Robinett, Brim & Arnett, Austin, for Ronnie Thompson and Randy Gritzner.

Samuel R. Baldwin, Jr., Truman W. Dean, Jr., Waterman, Dean, Groth & Moore, P.C., Houston, for Joe Jacques and Golda Davis.

Before POWERS, JONES and EARL W. SMITH,* JJ.

POWERS, Justice.

Four school districts appeal from a trial-court judgment that dismisses for want of jurisdiction their suit for declaratory judgment against the Commissioner of Education, William N. Kirby, and the Texas Education Agency.[1] We will reverse the judgment and remand the cause to the trial court for proceedings not inconsistent with our opinion.

## THE CONTROVERSY

Following a hearing, the board of trustees of each school district determined, adversely to an employee's interest, an employment dispute that had come before the board for decision.[2] In each instance, the employee "appealed" the board's decision to the Commissioner, as authorized by the

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

1. The four school districts are Cypress–Fairbanks Independent School District, Newton Independent School District, Rockwall Independent School District, and Lyford Independent School District.

2. The four employees are Joe Jacques, Golda Davis, Ronnie Thompson, and Randy Gritzner. Each intervened in the school districts' suit against the agency and the Commissioner. Each had "appealed" to the Commissioner under § 11.13(a) of the Education Code, challenging the decision of the school district that employed him or her. We shall summarize their "appeals" as best we can from the appellate record.

Jacques complained of the decision by the Cypress–Fairbanks I.S.D. "terminating" his employment as a teacher, contending the decision violated the constitutional guarantees of due

process of law and the provisions of two federal statutes, including 42 U.S.C. § 1981 (1981). He prayed that the Commissioner reverse the decision of the school district, reinstate him as a teacher, and award him attorneys fees pursuant to 42 U.S.C. § 1988 (1981) and Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (1986). A record of the evidence and proceedings in the school district was supplied the Commissioner.

Davis complained of the decision by the Newton I.S.D. denying her placement on Level III of the "career-ladder" classification system, contending the decision violated the constitutional guarantees of due process of law. She prayed that the Commissioner reverse the decision of the school district, place her on Level III, and award her "a reasonable amount of attorneys fees." No record of the evidence or proceedings in the school district was furnished the Commissioner.

Thompson complained of the decision by the Rockwall I.S.D. "terminating" his employment as an administrator, contending the decision

terms of Tex.Educ.Code Ann. § 11.13(a) (Supp.1990).[3]

The Commissioner determined that he would apply in each case the scope of review implicit in the phrase "pure trial de novo." That is to say, the Commissioner would receive evidence at the hearing required by § 11.13(a), weigh such evidence, make findings of fact and conclusions of law, and from them infer the final decision the board of trustees should have made in the case, substituting his own discretion and judgment in each particular for that of the board of trustees. In short, the Commissioner claimed the power to make an "original" decision in each case, as to the facts as well as the law, as opposed to an "appellate" decision limited to a review on questions of law only, including the question whether the original decision by the board of trustees was supported by "substantial evidence."[4] It appears undisputed that the Commissioner intends in each case to act upon the power claimed.[5]

When the Commissioner's intent became fixed, the four school districts filed in district court the original action we now review.

## THE DISTRICT–COURT PROCEEDINGS

In their petition, the school districts requested declaratory relief in two respects,

---

violated the constitutional guarantees of due process of law. He prayed that the Commissioner reverse the decision of the school district, reinstate him as an administrator, and award him "reimbursement for all back pay." A record of the evidence and proceedings in the school district was supplied the Commissioner. Gritzner, a teacher, challenged the decision of the Lyford I.S.D. regarding a grievance he had brought complaining of the school district's policy regarding the wearing of beards by teachers. No record accompanied his "appeal" to the Commissioner.

3. Section 11.13(a) of the Education Code provides:

Except in cases [not material here], persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees or board of education may appeal in writing to the commissioner of education, who, after due notice to the parties interested, shall hold a hearing and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy.

   *    *    *    *    *    *

4. It is not uncommon for a statutory scheme to provide for an "administrative appeal" to a higher administrative tribunal from the decision taken by a lower tribunal. The scheme may require of the higher tribunal a review that is "appellate" in nature, in the sense that its scope of review is limited to questions of law so that the higher tribunal is not authorized to receive evidence or re-weigh evidence adduced in the lower tribunal; rather, the higher tribunal may only determine whether the lower's factual determinations are supported by "substantial evidence" or whether its decision must be reversed for some other error of law. On the other hand, the statutory scheme may assign the higher tribunal the power of "original" decision in the sense that it is authorized to hear evidence that

it weighs to make its own findings of fact, and when these are considered together with its conclusions of law the higher tribunal reaches a discretionary decision that it substitutes for that reached by the lower tribunal. This scope of review is implicit in the phrase "trial de novo." The authorized scope of review depends in any particular case upon a proper construction of the relevant statutes. *See generally* 73A C.J.S. Public Administrative Law and Procedure §§ 170, 168–70 (1983); 2 Am.Jur.2d Administrative Law §§ 541, 542, 351–53 (1962).

In *Central Education Agency v. Upshur Co. Comm'rs Court,* 731 S.W.2d 559 (Tex.1987), the court arrived at a variant of the two foregoing possibilities as to the lawful scope of review, a variant derived from the peculiar Texas practice that distinguishes between "pure trial de novo and substantial evidence trial de novo." 731 S.W.2d at 562, fn. 2. The latter permits the Commissioner to receive evidence "solely for the purpose of determining whether there was fraud, bad faith or an abuse of discretion in the decision of the [lower tribunal] and whether [its] decision is supported by substantial evidence." 731 S.W.2d at 562. The scope of review intended by the Legislature in the statutes involved in the present case is, of course, a matter for the trial court to determine following our remand.

5. The parties stipulated in the court below that the Commissioner had overruled the school districts' request for "substantial evidence" review and that he will conduct "a pure trial de novo," in the sense of the "original" review described in footnote 4. In short, the Commissioner intends not to limit his scope of review to a "substantial evidence" review or to a determination relative to fraud, bad faith, or an abuse of discretion in the school districts' decisions. *Cf.,* Armstrong and Hollan, *Teacher Terminations and Non–Renewal in the Public Schools,* 16 St. Mary's L.J. 783 (1985).

coupled with a request for writ of *mandamus* if necessary to enforce the declaratory judgment.

Firstly, the school districts prayed for judgment that the scope of review authorized the Commissioner in § 11.13(a) and any other relevant statutes was limited to questions of law, an "appellate" review under the "substantial evidence rule" as opposed to a new "original" decision by him, as to the facts and the law, as implied in the phrase "pure trial de novo"; that his review was limited to the evidentiary record made before the board of trustees in the two instances where a record was compiled; and where such a record was not compiled before the board of trustees, he could receive evidence solely for the purpose of determining whether the board's decision was not supported by "substantial evidence" or whether it was arbitrary or fraudulent.

Secondly, the school districts prayed for judgment that the Commissioner was not authorized to award certain remedies in the "appeals" brought to him by the school-district employees under § 11.13(a). The school districts alleged that the employees had joined new "claims" in their appeals, and that the Commissioner intended to hear and determine those "claims" although he lacked the power to do so under a proper construction of the relevant statutes. In their allegations, the school districts appear to include in the word "claims" several quite different matters: (1) an employee's invocation of due-process guarantees as bearing upon his affected interest and con-

duct and the board of trustees' decision in his case; (2) an employee's request that the Commissioner award, in the appeal, attorney's fees under 42 U.S.C. § 1988 (1981) and Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (1986); (3) perhaps an employee's claim for money damages pursuant to the statutory cause of action authorized in 42 U.S.C. § 1988 (it is not altogether clear in the record that such a claim was made by an employee); and (4) an employee's claim for "reimbursement for all back pay."[6]

To the school districts' allegations, the agency and the Commissioner interposed three pleas to the jurisdiction: (1) a want of legislative consent to be sued, resulting in a want of jurisdiction under the sovereign-immunity doctrine; (2) "primary jurisdiction" in the Commissioner as an administrative tribunal; and (3) a failure by the school districts to "exhaust their administrative remedies" before resorting to the district court for relief.

After entertaining legal argument on the pleas to the jurisdiction, in a pre-trial hearing, the trial court "found" that the school districts had brought a suit for declaratory judgment but dismissed their suit on *each* of the three pleas interposed by the agency and the Commissioner. The school districts appealed to this Court.

### ADMINISTRATIVE APPEALS UNDER § 11.13(a)

The trial court did not purport to determine the merits of the school districts' claims for declaratory judgment. Nor do

**6.** The issue of the trial court's jurisdiction over the subject matter was determinable solely from the school districts' allegations, which are presumed to be true in the absence of any opposing plea that they were made fraudulently and solely for the purpose of conferring jurisdiction. *Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949). Presumably, the school districts intend to offer at trial evidence that will support their allegation that the Commissioner will conduct a hearing aimed at whether to award money damages and attorney's fees under the statutes mentioned, neither of which purports at first glance to authorize him to do so.
We have chosen not to discuss the question of subject-matter jurisdiction in terms of this issue. Most of what we say regarding the scope-of-re-

view issue applies equally to both issues. It is sufficient that we are required to reverse the judgment below on the scope-of-review issue alone, and a discussion of both issues would prolong this opinion inordinately. For example, our construction of any statute under which the Commissioner claims the power to award the traditional judicial remedy of money damages, in compensation for an injury, might raise a question of constitutionality on the point of whether it amounted to a legislative attempt to authorize an invasion of the judicial power assigned the courts of the State in the constitution. *See generally, Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556 (1916). Consequently, we leave the second issue to be developed further in the trial court.

we. We should, nevertheless, refer briefly to several related matters in order that our holdings may be correctly understood in the discussion that follows.

It is axiomatic that administrative agencies and officials have no "inherent" power. They receive government power by delegation from the Legislature, except in a few instances of constitutional delegation not applicable here, and they have no power outside the legislative grant. They may exercise only those powers conferred upon them by law in clear and express statutory language, for no additional authority will be implied by judicial construction, and they may not create for themselves any new and additional power in excess of that granted. *Key Western Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839 (1961); *Railroad Comm'n of Texas v. Rowan Oil Co.*, 152 Tex. 439, 259 S.W.2d 173 (1953); *Humble Oil & Refining Co. v. Railroad Comm'n*, 133 Tex. 330, 128 S.W.2d 9 (1939); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129 (Tex.App. 1986, writ ref'd n.r.e.).

The present dispute concerns the *scope* of the Commissioner's admitted power to review the decision of a board of trustees in four particular kinds of employee disputes. The power of review itself is given the Commission in § 11.13(a) of the Education Code, authorizing "appeals" to the Commissioner in such cases. But the provisions of other statutes may bear upon the scope of the Commissioner's power of review under § 11.13(a).

For example, the Supreme Court of Texas held that the word "appeal," as used in § 11.13(a), when considered in light of other statutory provisions placing the power of "original" decision in the county commissioners courts with regard to the detachment and annexation of school-district territory, implied that the Commissioner was limited in such "appeals" to an "appellate" scope of review, that is to say, a "substantial-evidence review" as opposed to an original re-determination of the case in its entirety; and while he might receive evidence in the "hearing" authorized by § 11.13(a), he did so "solely for the purpose of deter- mining whether there was fraud, bad faith or an abuse of discretion in the decision of the county commissioners and whether their decision is supported by substantial evidence." *Central Educ. Agency v. Upshur Co. Comm'rs Court*, 731 S.W.2d 559, 562 (Tex.1987). Not surprisingly, the school districts argue for the same construction of the statutory provisions applicable in the four employment disputes involved in the present appeal.

By way of another example, we note that in "appeals" from decisions under the Term Contract Renewal Act, the Commissioner is expressly limited to an "appellate" review, that is to say, he is forbidden to substitute his judgment for that of the board of trustees except where their decision is "arbitrary, capricious, unlawful, or not supported by substantial evidence." Tex. Educ.Code Ann. § 21.207 (1987).

The ultimate issue on appeal is: Did the district court have jurisdiction to give declaratory relief by determining the proper construction of any applicable statutes while the underlying disputes between the school districts and the affected employees were pending before the Commissioner? We shall consider each of the three grounds upon which the district court concluded that it lacked such jurisdiction.

## SOVEREIGN IMMUNITY

The Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. § 37.002 *et seq.* (1986 & Supp.1990) granted the district court explicit power to grant declaratory relief respecting the school districts' rights, status, or other legal relations under § 11.13(a) of the Education Code and other statutes applicable to the four employment disputes, concerning whether the statutory provisions did or did not mandate one scope of review as opposed to another. *See generally, California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780 (1960); *Southwestern Bell Tel. v. P.U.C. of Tex.*, 735 S.W.2d 663, 667–668 (App.1987, no writ). The court's authority to give such declaratory relief was, nevertheless, subject to that division of the doctrine of

sovereign immunity requiring legislative consent to suits "against the State." *W.D. Haden Company v. Dodge,* 158 Tex. 74, 308 S.W.2d 838, 839 (1958). Did the doctrine deprive the court of jurisdiction in this instance?

It is well-established that legislative consent is not required when the purpose of the plaintiff's suit is to compel a state officer to perform a non-discretionary duty imposed by law and owed to the plaintiff, or to obtain protection or relief from the *ultra vires* or unlawful act of the officer or from a burden unlawfully imposed by him. These are not suits "against the State" within the meaning of that division of the sovereign immunity doctrine requiring legislative consent. *See, e.g., Director, Dept. of Agriculture and Environment v. Printing Industries Ass'n of Texas,* 600 S.W.2d 264 (Tex.1980); *Texas Highway Comm'n v. Texas Assoc. of Steel Importers, Inc.,* 372 S.W.2d 525 (Tex.1963); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709 (1945); *State v. Epperson,* 121 Tex. 80, 42 S.W.2d 228 (1931); *Laidlaw Bros. v. Marrs,* 114 Tex. 561, 273 S.W. 789 (1925); *see generally* Hartsfield, *Governmental Immunity from Suit and Liability in Texas,* 27 Texas L.Rev. 337, 337–42 (1949).

Such a purpose is explicit in the school districts' allegations that the Commissioner intends to act in excess of his lawful authority in reviewing the school districts' decisions by "pure trial de novo" rather than a review confined to questions of law, which is the alleged limit of his lawful authority under the relevant statutory provisions properly construed. The issues of statutory construction raised by these allegations involve not the Commissioner's discretion in exercising a power but the lawful bounds of his powers under the statutes in question.

We hold, therefore, that the school districts' want of legislative consent did not deprive the district court of jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ The "exhaustion" doctrine refers to the timing of any judicial review of an action taken by an administrative agency— in the present case the Commissioner's ruling that he will make an "original" decision in each of the four employee disputes as opposed to an "appellate" decision limited to questions of law.

The "exhaustion" doctrine holds that a party in an administrative proceeding is not entitled to judicial relief, to avoid a threatened or supposed injury resulting from an agency action, until he has first pursued all the possibilities of correction in the agency itself. *Texas State Bd. of Examiners in Optometry v. Carp,* 162 Tex. 1, 343 S.W.2d 242 (1961). The doctrine rests upon policies favoring conservation of judicial resources and deference to the agencies— their autonomy, responsibilities, prerogatives, experience, and expertise in administering the statutory provisions entrusted to them by the Legislature. *Public Util. Comm'n v. Pedernales Elec. Co-op.,* 678 S.W.2d 214, 219–20 (Tex.App.1984, writ ref'd n.r.e.); *see generally* Schwartz, Administrative Law § 8.30, 502–04 (2d ed. 1984); 2 Cooper, State Administrative Law, 572–76 (1965); Marschall, *Timing of Judicial Review,* 33 Texas L.Rev. 701, 704–10 (1955); Davis, *Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction,* 28 Texas L.Rev. 168, 168–74 (1949).

The policies behind the "exhaustion" doctrine permit in some instances a relaxation of the general rule that the administrative proceeding must be pursued to its end before a court will exercise its power of judicial review. These "exceptions" are noted in 2 Cooper, *supra,* at 557–81.

One of the exceptions to the "exhaustion" requirement permits a party to initiate an administrative proceeding to obtain judicial review and relief from any *ultra vires* actions an agency has taken or intends to take. *Id.* at 557. "[W]hen there is an absence of jurisdiction in an administrative agency, then the doctrine of exhaustion of remedies is not applicable." *Westheimer Indep. School Dist. v. Brockette,* 567 S.W.2d 780, 785 (Tex.1978); *McFarlin v. State,* 272 S.W.2d 630, 631 (Tex.Civ.App. 1954, writ ref'd n.r.e.).

We believe the school districts' allegations make an explicit complaint that the Commissioner intends to exercise a power he does not have under § 11.13(a) or any other statute: a power to hear and determine the four "appeals" as an "original" matter as opposed to an "appellate" matter, with the relative differences and limitations these two terms imply.

One may hardly characterize as "procedural" the Commissioner's ruling that he will make an "original" decision rather than an "appellate" decision. The first permits the Commissioner to re-examine the facts and the law in a "pure trial de novo" in which he receives and weighs the new evidence and judges the credibility of witnesses, ultimately to infer new facts and conclusions of law and a final discretionary decision of his own that determines the case afresh and independently of the school district's antecedent decision. The second permits the Commissioner to re-examine the school-district decision for errors of law alone, including the questions of "substantial evidence" and arbitrariness; and unless such an error requires reversal, the school-district decision stands. *If* the applicable statutes confine the Commissioner to an "appellate" review, he usurps unlawfully the important powers, duties, and prerogatives of the boards of trustees by purporting to make an "original" inquiry into each dispute and an "original" decision in substitution .of their decisions; he causes the school districts to incur the additional costs associated with an entirely new "trial" before him as the tribunal; and he thwarts their "functioning in accordance with the duties and responsibilities of a duly created school district." *Brockette*, 567 S.W.2d at 789. In short, the Commissioner exceeds his jurisdiction in such a case, *if* the school districts' theory of statutory construction prevails in the district-court.

We hold, therefore, that the school districts' allegations challenged on jurisdictional grounds the actions intended to be taken by the Commissioner in his review of the school districts' decisions in the four cases. Consequently, the "exhaustion" doctrine did not deprive the district court of jurisdiction to hear and determine the school districts' prayer for declaratory relief.

## PRIMARY JURISDICTION

■ We do not conceive that the "primary jurisdiction" doctrine applied to the case made by the school districts' pleadings, to any matter developed in the stipulations of the parties, or to any matter arising in the legal argument that preceded the trial court's dismissal of the school districts' case for want of jurisdiction.

The judicially-created doctrine of "primary jurisdiction" applies in determining whether the court or the agency should make the *initial* decision on an *issue* concerning which the court and the agency share a *concurrent* jurisdiction or power of decision. The doctrine presupposes that the issue has arisen in the context of a lawsuit *within* the court's jurisdiction. Where the doctrine so dictates, the court suspends the lawsuit until the agency has had an opportunity to act on what the Legislature has committed to its decision— either the whole issue or some essential aspect of an issue. The main purpose underlying the doctrine is to secure uniformity in the application of regulatory laws; a secondary purpose in some instances is to secure the advantages of agency expertness. Where these purposes are not served, the doctrine does not require suspension of the lawsuit until the agency has made the initial decision. *See generally Kavanaugh v. Underwriters Life Ins. Co.*, 231 S.W.2d 753 (Tex.Civ.App.1950, writ ref'd); 2 Cooper, State Administrative Law, 562–66 (1961); Davis, Administrative Law Text § 19.01, 373–74 (3d ed. 1972); Schwartz, Administrative Law § 8.23, 485–86, § 8.24, 486–88, § 8.26, 491–94 (1984).

Whether the doctrine requires an initial decision by the agency, and a resulting suspension of the judicial proceeding, depends upon the nature of the issue, the nature of the lawsuit, and the nature of the statutory or administrative scheme. *Id.* For example, "[w]here the issue is one inherently judicial in nature ... the courts are not ousted from jurisdiction unless the

Legislature, by a valid statute, has explicitly granted *exclusive* jurisdiction to the administrative body" to determine that issue. *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 415 (1961). (The "inherently judicial" issue in the *Gregg* case was whether the defendant's oil and gas operations, authorized by the Texas Railroad Commission, amounted to a "trespass" at common law.) *See also Zimmerman v. Texaco, Inc.*, 413 S.W.2d 387 (Tex. 1967). Moreover, an initial agency decision is not required "when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of relief" by the court. *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex.1968).

To outline the purpose, nature, and operation of the doctrine demonstrates its inapplicability here. The parties agree that the Commissioner *has made* a decision on the relevant issue of whether the statutory scheme, including § 11.13(a), authorizes him to conduct a "pure trial de novo" and to give an "original" decision in substitution of that made by the school district boards of trustees. He manifestly has *not* been by-passed on an issue committed to his decision. He has *made* the initial decision and whether his decision is now subject to judicial review, before completion of the administrative process, is a question to be determined under the "exhaustion" doctrine, a matter we have discussed above.

We hold the trial court was not deprived of jurisdiction by reason of the "primary jurisdiction" doctrine.

We hold, in summary, that the trial court erred in its decision that it lacked jurisdiction on each of the three grounds recited above. We therefore reverse the district-court judgment and remand the cause to that court for proceedings not inconsistent with our opinion.