TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN











NO. 03-97-00533-CV







American Express Tax & Business Services, Inc., formerly known as

I.D.S., Financial Services, Inc., Appellant



v.




Texas State Board of Public Accountancy, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 95-07496, HONORABLE JOHN DIETZ, JUDGE PRESIDING







 The opinion and judgment filed herein on May 29, 1998, are withdrawn, and the
following opinion is issued in lieu of the earlier one.

 Appellee Texas State Board of Public Accountancy ("the Board") filed suit against
appellant American Express Tax and Business Services, Inc. ("TBS"), formerly known as I.D.S.,
Financial Services, Inc., to enjoin TBS from engaging in the unauthorized practice of accountancy. 
TBS filed a counterclaim seeking declaratory relief. The Board filed a motion for summary
judgment on its claims, which the trial court granted in part and denied in part. TBS also filed a
motion for summary judgment on the claims stated in its counterclaim. The trial court granted
TBS's motion as to one of its claims, but dismissed the remainder for lack of jurisdiction. On
appeal, TBS complains only of the trial court's dismissal of a portion of its counterclaim. We will
reverse the dismissal and remand that portion of the cause.


FACTUAL AND PROCEDURAL BACKGROUND

 TBS provides a variety of tax and business services to individuals and businesses. 
TBS employs certified public accountants (CPAs) to help provide these services. However, TBS
is not a licensed CPA firm in Texas because it is not 100% CPA owned. The underlying issue
in the dispute between the Board and TBS involves what type of services may be performed by
a company that is not a duly licensed CPA firm. Specifically, this dispute concerns: (1) the extent
to which TBS and its individual CPA employees may participate in the preparation of financial
statements and accompanying transmittal letters, and (2) the proper wording of the transmittal
letters prepared by TBS.

 The Public Accountancy Act of 1991 strictly controls the practice of public
accountancy. See Tex. Rev. Civ. Stat. Ann. art. 41a-1 (West Supp. 1998). Only licensed CPAs
and CPA firms may issue "attest" financial statements. An attest financial statement provides
assurances that a business's financial statement reviewed by the CPA represents a fair and accurate
portrayal of the business's financial condition, based on generally accepted accounting principles. 
"Nonattest" financial statements do not make such assurances and, accordingly, may lawfully be
prepared by unlicensed persons and firms such as TBS. The transmittal letters accompanying
nonattest financial statements may not, however, indicate that the preparer has any expert
knowledge in accounting or auditing.

 In June 1995, the Board filed suit against TBS to enjoin it and its employees from
preparing and issuing certain types of financial statements and transmittal letters. In its original
and first-amended petitions, the Board alleged not only that TBS could not lawfully use CPAs to
prepare such statements and letters, but also that TBS's individual CPA employees were violating
the Accountancy Act by participating in the preparation and review even of nonattest financial
statements and accompanying transmittal letters. The Board also alleged that the wording of the
transmittal letters used by TBS violated the Act. The trial court granted the Board's motion for
summary judgment in part, by enjoining TBS from issuing one specific form of transmittal letter
("Type I"); the court denied the Board's motion in all other respects.

 The Board ultimately filed a third-amended petition in which it complained only of
the wording of TBS's transmittal letters, and did not complain of TBS's use of CPAs, nor of the
participation by CPA employees in the preparation of either financial statements or transmittal
letters. In response to the Board's third-amended petition, TBS filed a counterclaim seeking a
declaratory judgment that:


[1] TBS may lawfully employ licensed CPAs to assist in the preparation of financial
statements that may lawfully be prepared and issued by unlicensed entities, and [2]
the licensed CPAs do not violate the [Accountancy] Act or the Rules of
Professional Conduct[ (1)] by virtue of being employed by TBS to assist in the
preparation of financial statements [and transmittal letters] that may lawfully be
prepared and issued by unlicenced entities, or [3] in the alternative, that the Act
and the Rules of Professional Conduct violate Art. I, §§ 3 and 19 of the Texas
Constitution and the First and Fourteenth Amendments to the United States
Constitution to the extent they prohibit licensed CPAs from being employed by
unlicensed entities to assist in the preparation of financial statements and transmittal
letters that may lawfully be provided by unlicenced entities.



 TBS filed a motion for summary judgment on the declaratory relief requested in its
counterclaim. In response to this motion, the Board asserted that TBS lacked standing to seek a
declaratory judgment with respect to the second and third claims stated above. In granting TBS's
motion in part, the trial court's final judgment declared that TBS could lawfully issue a specific
form of transmittal letter ("Type II"), but dismissed all other claims asserted in TBS's
counterclaim due to lack of jurisdiction.

 TBS perfected this appeal and raises one issue: Did the trial court err by
concluding that it lacked jurisdiction over TBS's remaining claims for declaratory relief asserted
in its counterclaim?


DISCUSSIONStanding

 The primary question here is whether TBS has standing to raise the issue of whether
its CPA employees could lawfully assist in preparing nonattest financial statements and Type II
transmittal letters. Although the trial court ruled that TBS may lawfully prepare and issue these
documents (and impliedly may not be enjoined by the Board for employing CPAs to prepare
them), the court's dismissal left unanswered the question whether the individual CPAs employed
by TBS might run afoul of accountancy rules and laws in preparing nonattest financial statements
and Type II transmittal letters.

 As a component of subject-matter jurisdiction, the standard by which we determine
whether a party has standing requires the pleader to allege facts that affirmatively demonstrate the
court's jurisdiction to hear the cause. Texas Ass'n of Business v. Texas Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993). Texas appellate courts construe the pleadings in favor of the
plaintiff and look to the pleader's intent. Id. The general test for standing in Texas requires (1)
a real controversy between the parties (2) that will be determined by the relief sought. Id.

 The pertinent facts alleged by TBS in its counterclaim are that: (1) the Board
initiated an action against TBS contending, among other things, that individual licensed CPAs
were prohibited by the Rules of Professional Conduct from preparing nonattest financial statements
and Type II letters; (2) TBS employs CPAs to assist in the preparation of Type II letters; and (3)
if the Rules or Accountancy Act prohibit CPAs from being employed by TBS in this capacity, then
these laws are irrational in, among other things, disallowing TBS from employing a CPA to
perform tasks a less qualified person may perform, and in suppressing competition.

 The Board contends these facts do not show sufficient harm or potential harm to
TBS to empower it, as an entity, to assert what the Board characterizes as a potential controversy
between individual CPAs and the Board. The Board argues that, to have standing, a plaintiff must
assert some restriction of its own rights, not someone else's. See Texas Workers' Compensation
Comm'n v. Garcia, 893 S.W.2d 504, 518 (Tex. 1995). We conclude that there is sufficient
potential harm alleged by TBS to its own interests for it to have standing to raise its claim for
declaratory relief. The potential injury to TBS is not the injury to the "right" of its CPAs to
prepare the relevant documents, but rather is the potential damage to TBS's employment
relationship with its CPAs and the accompanying damage to TBS's competitive status if the CPAs
employed by TBS cannot lawfully perform these tasks.

 The Board asserts that TBS did not specifically allege that its CPAs are resigning
or will resign as a result of the Board's actions regarding the preparation of Type II letters. 
Although there is no such specific allegation in TBS's pleading, a fair reading of the facts alleged
conveys that the employment relationship between TBS and its CPA employees will be harmed
if individual CPAs may not lawfully prepare these financial statements and letters, even if TBS
itself may not be enjoined by the Board from employing such persons or issuing such letters. See
Garcia, 893 S.W.2d at 518-19 (though not specifically shown, assumption that AFL-CIO union
members suffered compensable injuries under Workers' Compensation Act is fair and not
unadorned speculation). (2)

 It is possible for a party to plead facts that affirmatively demonstrate an absence of
jurisdiction. See Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989). Under such
circumstances, immediate dismissal of the case should occur. Otherwise, a liberal construction
in favor of jurisdiction is appropriate. Id. If such a liberal construction does not yield a
conclusion that the court has jurisdiction, the appropriate remedy is to allow the plaintiff an
opportunity to amend before dismissing. Id. at 805; see Texas Ass'n of Business, 852 S.W.2d at
446. In the present case, TBS did not affirmatively plead itself out of court. Thus, the trial court
was required to give TBS an opportunity to amend its pleadings to cure any jurisdictional defects. 
Under the present circumstances, however, amendment is unnecessary because we hold that a
liberal construction of TBS's pleadings provides sufficient grounds to support TBS's standing to
seek declaratory relief in its counterclaim.


Primary Jurisdiction

 On appeal, the Board also argues that the primary-jurisdiction doctrine required
dismissal or at least abatement of this cause. The judicially created doctrine of primary
jurisdiction applies in determining whether the court or agency should make the initial decision
on an issue. D & S Invs., Inc. v. Mouer, 521 S.W.2d 118, 120 (Tex. Civ. App.--Austin 1975,
writ ref'd n.r.e.). Where appropriate, a court suspends adjudication until the agency has had an
opportunity to act on the issue. Id. Furthermore, administrative questions that need resolution
by the expert and specialized knowledge of agencies present the strongest case for invoking the
primary-jurisdiction doctrine. Lens Express, Inc. v. Ewald, 907 S.W.2d 64, 71 (Tex.
App.--Austin 1995, no writ).

 The issue of primary jurisdiction was not raised at the trial court, but is raised by
the Board on appeal. To the extent the doctrine of primary jurisdiction raises subject-matter
jurisdiction, it may be raised at any time. See Gregg v. Delhi-Taylor Oil Corp., 344 S.W.2d 411,
416 (Tex. 1961). Therefore, we may look to the whole record to determine if the trial court
lacked jurisdiction. See Texas Ass'n of Business, 852 S.W.2d at 446 (where jurisdictional issue
was not raised at trial, appellate court could review entire record to determine whether dismissal
was required because plaintiff did not have opportunity to amend pleadings to cure defect alleged). 
In the present case, the Board has made an initial decision on the applicability of the rules in
question by instigating this suit, contending among other things that individual CPAs could not
lawfully prepare Type II letters. (3) We therefore conclude that the primary-jurisdiction doctrine
does not require dismissal of this case. Cf. Railroad Comm'n v. ARCO Oil & Gas Co., 876
S.W.2d 473, 478 (Tex. App.--Austin 1994, writ denied) (primary jurisdiction does not require
dismissal where agency has already made initial decision on issue in question by promulgating
challenged rule); Cypress-Fairbanks Indep. Sch. Dist. v. Texas Educ. Agency, 797 S.W.2d 336,
342-43 (Tex. App.--Austin 1990) (primary jurisdiction did not require dismissal where
Commissioner had already made decision on relevant issue), rev'd on other grounds, 830 S.W.2d
88, 90-91 (Tex. 1992).


Exhaustion of Remedies

 TBS argues that the doctrine of exhaustion of remedies, raised by the Board in its
special exceptions, does not require dismissal of this case. We agree. TBS's counterclaim
challenging the applicability of the Board's rules is expressly authorized by the Administrative
Procedure Act. See Tex. Gov't Code Ann. § 2001.038 (West Supp. 1997). "A court may render
a declaratory judgment without regard to whether the plaintiff requested the state agency to rule
on the validity or applicability of the rule in question." Id. § 2001.038(d). Plaintiffs are not
required to exhaust their administrative remedies before initiating a declaratory judgment action
under section 2001.038. ARCO, 876 S.W.2d at 479; Department of Human Servs. v. ARA Living
Ctrs. of Texas, Inc., 833 S.W.2d 689, 692 (Tex. App.--Austin 1992, writ denied). In ARCO, the
validity of a Railroad Commission rule was being challenged. In the present case, it is the
applicability of Board rules that is in issue. Section 2001.038 states that in neither case is
exhaustion of remedies required. (4) The exhaustion-of-remedies doctrine does not support the trial
court's dismissal of TBS's remaining claims.


CONCLUSION

 We reverse the portion of the district court's judgment dismissing for want of
jurisdiction TBS's counterclaims for declaratory relief and remand that portion of the cause to the
district court for further proceedings.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones 

Reversed and Remanded

Filed: September 11, 1998

Do Not Publish
1. See 22 Tex. Admin. Code §§ 501.1-.50 (1997) (Rules of Professional Conduct for
accountants).
2. In addition, TBS alleged that if its CPAs may not lawfully prepare these letters, such a rule
would be irrational and would injure TBS's competitive status.
3. The case for dismissal due to primary jurisdiction is especially weak where the only action
available is a coercive one by the agency with potential significant harm which the party could
avoid by having the issue resolved within a declaratory judgment action. To otherwise routinely
hold primary jurisdiction to defeat the declaratory judgment action would arguably make an
"applicability" challenge a nullity. See Ron Beal, Texas Administrative Practice and Procedure
12-15 (1997); see Tex. Gov't Code Ann. § 2001.038 (West 1997).
4. While exhaustion of remedies may not be required by APA § 2001.038, plaintiff must have
standing to bring the suit and the suit must be ripe for adjudication. We have already discussed
standing in the body of this opinion. This case is ripe for adjudication because the Board has
already made the contention that TBS's CPAs violate the Board rules by preparing Type II letters.



jurisdiction raises subject-matter
jurisdiction, it may be raised at any time. See Gregg v. Delhi-Taylor Oil Corp., 344 S.W.2d 411,
416 (Tex. 1961). Therefore, we may look to the whole record to determine if the trial court
lacked jurisdiction. See Texas Ass'n of Business, 852 S.W.2d at 446 (where jurisdictional issue
was not raised at trial, appellate court could review entire record to determine whether dismissal
was required because plaintiff did not have opportunity to amend pleadings to cure defect alleged). 
In the present case, the Board has made an initial decision on the applicability of the rules in
question by instigating this suit, contending among other things that individual CPAs could not
lawfully prepare Type II letters. (3) We therefore conclude that the primary-jurisdiction doctrine
does not require dismissal of this case. Cf. Railroad Comm'n v. ARCO Oil & Gas Co., 876
S.W.2d 473, 478 (Tex. App.--Austin 1994, writ denied) (primary jurisdiction does not require
dismissal where agency has already made initial decision on issue in question by promulgating
challenged rule); Cypress-Fairbanks Indep. Sch. Dist. v. Texas Educ. Agency, 797 S.W.2d 336,
342-43 (Tex. App.--Austin 1990) (primary jurisdiction did no