DENNIS, Circuit Judge:
Randall Coggin brought this action under 42 U.S.C. § 1983 against his former employer,- a Texas independent school district, because its board of trustees terminated his employment contract without any kind of a hearing. After a bench trial, the district court rendered judgment in favor of Coggin. A divided panel of our court affirmed.[1] A majority of the judges in active service voted to rehear the case en banc.[2] We now affirm the judgment of the district court.
I. Statutory Procedure for Termination of School Board Employees’ Term Contracts
Under the Texas Education Code, a school board has the power to terminate a term contract and discharge a teacher at any time “for good cause as determined by the board.”[3] Prior to terminating a term contract, however, the board must give the teacher notice of its proposed action.[4] If the teacher desires a pre-termination hearing under state law, he must file a written request with the state commissioner of education (“Commissioner”) within 15 days of receiving notice of his proposed termination.[5] Within 10 business days of receiving a timely request for a hearing, the Commissioner must assign a hearing examiner to conduct a hearing in that particular case.[6] Not later than 45 days after the Commissioner receives a request for a hearing, the hearing examiner shall complete the hearing and recommend findings of fact, conclusions of law, and, if appropriate, the granting of relief.[7] The school board, not the Commissioner, is taxed with the costs of the hearing examiner, the shorthand reporter, and the production of a hearing transcript.[8]
After receiving the examiner’s recommendation and the record of the hearing, the school board or its designated subcommittee must consider them and allow each party to present an oral argument to the board or subcommittee.[9] Within 10 days of that meeting, the board must announce a decision that includes findings of fact and conclusions of law and that may include a grant of relief.[10] The board may adopt, reject, or change the hearing examiner’s conclusions of law or proposal for granting relief, and it may reject or change the hearing examiner’s finding of facts not *461 supported by substantial evidence in the record.[11]
Section 7.057(d) of the Texas Education Code provides that “[a] person aggrieved by an action of the agency or decision of the Commissioner may appeal to a district court in Travis County.”[12] This appeal must be made by serving the Commissioner as in a civil suit, and the court shall determine all issues of law and fact at trial.[13]
II. Factual and Procedural Background
Randall Coggin worked for the Long-view Independent School District (“LISD”) for more than 30 years. From 1983 until his discharge on September 13, 1999, Cog-gin supervised the LISD Career and Technology Education department. At the time of his discharge, Coggin was employed under a two-year term contract spanning the 1998-1999 and 1999-2000 academic years. Before receiving notice of his proposed termination, his performance appraisals were generally complimentary. On August 12, 1999, however, Coggin received a letter from the LISD’s new superintendent notifying him that the school board proposed to terminate his employment contract for engaging in various alleged improprieties, including sexually harassing female subordinates, using LISD resources for his personal benefit, impeding the LISD’s investigation of his behavior, and falsifying asbestos records. On August 24, Coggin deposited copies of his written request for a hearing with the U.S. Postal Service for delivery via certified mail, properly stamped and addressed to the Commissioner and the school board. The school board received its copy of Cog-gin’s request on August 26, but the Commissioner did not receive the request until August 30. Because the Commissioner mistakenly thought that Coggin’s request must have been received, rather than filed, by August 27, 1999, he refused to appoint a hearing examiner. On September 2, 1999, the Commissioner mailed copies of a letter addressed to both Coggin and the LISD’s counsel stating that (1) the Commissioner had received Coggin’s written request for the appointment of a hearing examiner; (2) the request was dated and postmarked before the August 27 deadline for fifing; (3) the Commissioner received the request on the third day following the deadline; but (4) the Commissioner would not appoint a hearing examiner because Coggin’s request was received after the deadline. After Coggin received the Commissioner’s September 2 letter, Coggin’s attorney and the Commissioner engaged in a “flurry of correspondence” regarding the timeliness of Coggin’s request for a hearing, but the Commissioner declined to reconsider his refusal to appoint a hearing examiner.[14]
On September 13, 1999, the LISD school board, without giving further notice to Coggin or any kind of a hearing, adopted a resolution discharging Coggin as an employee of the LISD. The LISD concedes that it was aware of the Commissioner’s refusal to appoint a hearing examiner prior to the board’s action. Thus, as the district court found, “[w]hen it terminated Cog-gin’s contract, the LISD board had actual knowledge that Coggin had requested a hearing on the termination of his contract, the date on which he had requested it, and that no hearing of any kind had been held.”[15]
*462 On November 12, 1999, Coggin brought suit against the LISD, the Texas Education Agency (“TEA”), and the Commissioner under 42 U.S.C. § 1983 for depriving him of his property without due process of law. After the district court expressed its opinion that the TEA and the Commissioner had a valid Eleventh Amendment defense, Coggin dismissed his § 1983 claim against them, and the case proceeded solely against the LISD. Following a bench trial, the district court concluded that (1) Coggin timely filed his request for a hearing as required by state law; (2) the board had notice that Coggin had not received a hearing despite his timely request; (3) the board deprived Coggin of his property without due process when it terminated his employment contract without any kind of a hearing; (4) the LISD failed to prove that Coggin had engaged in the alleged misconduct and therefore had no cause to terminate his employment contract; and (5) Coggin was entitled to $215,894 in damages and attorney’s fees. The LISD appealed.
III. The LISD’s Action Was the Sole Cause of The Violation of Coggin’s Right to Due Process
On appeal the LISD does not dispute that its termination of Coggin’s employment in the middle of his two-year term employment contract deprived him of a constitutionally protected property interest in continued employment, or that Coggin was entitled to constitutional due process in conjunction with the proposed termination of that employment.[16] Nor does it challenge or point to any error in the district court’s determination that Coggin timely filed his request for a hearing.[17] LISD argues, instead, that any deprivation of Coggin’s right to due process of law was caused by the Commissioner’s refusal to appoint a hearing examiner, not by the school board’s termination of his employment contract without a hearing: “The gravamen of this dispute is a question of causation.”[18] Thus, the LISD contends that the Commissioner’s action, to the exclusion of its own, should be considered the sole cause of the deprivation of due process and, therefore, that it is not responsible for the violation.
The LISD’s irrevocable discharge of Coggin without a hearing just 4 business days after Coggin’s receipt of the Commissioner’s notice of refusal was the sole cause of the violation of Coggin’s right to due process of law.[19] The LISD argues that the Commissioner’s erroneous refusal to appoint a hearing examiner was the cause of the violation because Coggin *463 waived his rights by not appealing the Commissioner’s decision through the filing of a civil suit in state district court as provided for by § 7.057(d) of the Texas Education Code. We disagree.
Section 7.057(d) does not prescribe a time limit within which a person aggrieved by an action of the Commissioner must file an appeal in the district court. The Texas Administrative Procedures Act, however, provides that an aggrieved person is allowed 30 days to appeal from the decision of an administrative agency.[20] Thus, Cog-gin was afforded 30 days by the Texas procedure to file his appeal in district court contesting the Commissioner’s refusal to assign a hearing examiner.[21] But the LISD’s discharge of Coggin just 4 business days after his receipt of the Commissioner’s notice of refusal prematurely cut off Coggin’s right to appeal under § 7.057(d) and unreasonably foreclosed the possibility of a pre-termination due process hearing in his case.
Consequently, we conclude that Coggin did not waive his rights, and that the LISD’s action of peremptorily discharging Coggin without a hearing just 4 business days after his receipt of the Commissioner’s notice of refusal was the sole cause of the violation of his right to due process of law. The Commissioner’s erroneous decision was not a cause of the violation because, if the LISD had not peremptorily discharged Coggin, that error could have been corrected on appeal by the state district court’s order that the Commissioner assign a hearing examiner in accordance with the Texas Education Code procedure.
IV. The LISD Was the Responsible State Actor
This court’s standard analysis for determining who is the state actor responsible for a constitutional violation in an action arising under § 1983 reaches the same result. In Bush v. Viterna, we identified three key questions that guide our analysis of causes of action arising under § 1983:
[T]he first question must be whether a federally secured right has been affected.... The second question that must be asked is whether the alleged deprivation of a federal right has been accomplished by state action.... After one has found a deprivation of a federally secured right and has determined that it *464 resulted from state action, one must ask a third question: Who is the state actor responsible for this violation?[22]
In this case, because Coggin was deprived of his protected employment right without the due process hearing to which he was entitled and which he did not waive, and because that deprivation involved two state actors, the only question presented is who is the state actor responsible for the violation — the LISD or the Commissioner.[23] This inquiry depends on an analysis of state law.[24] That is, in order to identify the responsible state actor, we must determine how state law distributes government functions.[25] But we do not apply state law; rather, we “simply [use] state law to identify the persons responsible for an identified civil rights violation.”[26]
Texas law assigns to the school board, as the governing body of the school district, exclusive policy making authority with regard to employment decisions. The state law is clear that the school board, alone, may terminate a term contract and discharge an employee upon a finding of good cause.[27] Only the school board can determine whether such cause exists and whether an employee should be discharged as a result.[28] Under the explicit terms of the statute, then, the LISD was the final policy and decision maker with respect to Coggin’s discharge.
By comparison, under Texas law the Commissioner is not vested with any final policymaking authority concerning either the determination of cause to discharge or the actual discharge of school district employees. The Commissioner’s role of appointing a hearing examiner upon the timely filing of a request by an employee is ministerial and does not involve or require any policymaking. Consequently, there was no policy authored by the Commissioner that caused the particular constitutional violation at issue. In fact, there was no action taken by the Commissioner that deprived Coggin of his property without due process of law. The Commissioner has no authority to discharge a school *465 district employee or to require the school board to terminate an employment contract. Indeed, the statute even requires that the school board, not the Commissioner, bear the costs of the hearing examiner, the shorthand reporter, and the production of a hearing transcript. In short, the Commissioner could not have been responsible for causing the termination of Cog: gin’s employment contract for cause without a pre-termination hearing because he could not determine cause or discharge Coggin.
Consequently, because the school board was the final arbiter of employment disputes under Texas law, it was exclusively responsible for hearing Coggin’s arguments against discharge before resolving the questions of cause and discharge.[29] Contrary to the LISD’s arguments, Texas law has not removed or separated from the school board the function of providing pre-termination due process to its employees.[30] Under well-established federal law, the constitutional mínimums for due process require that the final decision maker must hear and consider the employee’s story before deciding whether to discharge the employee.[31] The purpose of this is self-evident. It is to provide a “meaningful opportunity to invoke the discretion of the decisionmaker ... before the termination takes effect.”[32] The Texas law complies with the federal due process requirement by providing that the school board, as the exclusive decision maker with regard to employment termination decisions, “shall *466 allow each party to present an oral argument to the board” before the board determines cause or discharges the employee.[33] Thus, under the responsible state actor analysis we conclude that the LISD is the state actor responsible for the violation in this case.
V. Answer to Amicus Argument,
Contrary to the argument of the LISD’s amicus, the Texas Association of School Boards Legal Assistance Fund, this decision in no way subjects a school board to liability for acts other than its own. If the Commissioner does not abide the prescribed scheme, Texas gives an aggrieved school employee the right to appeal to a state district court, thereby providing constitutional due process.[34] If the mandated procedure is followed, an employee will also have been afforded constitutional due process when a school board makes its final termination decision. When a school board disregards the statutory scheme, here depriving the employee of his right to appeal, however, it may subject itself to liability, not for the act of another but for its own act. To the point, had the school board given Coggin the statutorily allotted time to appeal the Commissioner’s decision, there would have been no denial of due process.[35]
VI. Conclusion
For the foregoing reasons, we AFFIRM the judgment of the district court.
AFFIRMED.

. Coggin v. Longview Indep. Sch. Dist., 289 F.3d 326 (5th Cir.2002).

. Coggin v. Longview Indep. Sch. Dist., 309 F.3d 307 (5th Cir.2002).

. Tex. Educ.Code Ann. § 21.211(a)(1) (Vernon 1996). Under Texas law, each independent school district is considered a municipal governmental entity, id. § 11.151, and is governed by a board of trustees (i.e., a school board), id. § 11.051(a).

. Id. §§ 21.251(a)(1), 21.253.

. Id. § 21.253. The Commissioner is appointed by the governor with the advice and consent of the state senate, id. § 7.051, and heads the Texas Education Agency, id. §§ 7.002, 7.055.

. Id. § 21.254(c).

. Id. § 21.257.

. Id. § 21.255(e).

. Id. § 21.258.

. Id. § 21.259.

. Id.

. Id. § 7.057(d)

. Id.

.District Court's Memorandum Opinion at 10.

.Id. at 10-11.

. Defendant’s Supp. En Banc Brief at 15.

. Indeed, the LISD insists that the matter of the timeliness of Coggin’s request for the appointment of a hearing examiner is irrelevant to its appeal:
Regardless of whether Coggin failed timely to file a request for hearing under those procedures or the Commissioner erred as a matter of state law in interpreting the TEA filing requirements, any such dispute (1) was not a dispute involving the School District, (2) was not caused by LISD, and (3) was waived when Coggin failed to pursue appropriate relief in court against TEA and the Commissioner.
Id. at 22.

. Id. at 9.

. The Commissioner mailed his erroneous decision to Coggin and LISD on Thursday, September 2, 1999. Because of the intervening Labor Day on September 6, 1999 and the two days required for delivety of other mail in this case, Coggin could not have received the Commissioner’s September 2 letter until Tuesday, September 7, 1999. Therefore, the LISD discharged Coggin only 4 business days after he had received the Commissioner’s September 2 letter.

. Tex. Gov’t Code Ann. § 2001.176 (Vernon 2000) ("A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date on which the decision that is the subject of complaint is final and appealable.”). A "contested case” means "a proceeding ... in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing.” Id. § 2001.003(1). The Texas courts have construed this definition to include situations in which a state agency adjudicates a party’s legal rights in an exercise of quasi-judicial authority, as opposed to making such an adjudication in an exercise of rule making authority. See WBD Oil & Gas Co. v. Railroad Comm'n of Tex., 35 S.W.3d 34, 44 (Tex.App.1999); Ramirez v. Texas State Bd. of Med. Exam’rs., 927 S.W.2d 770, 772 (Tex.App.1996); Best & Co. v. Texas State Bd. of Plumbing Exam’rs., 927 S.W.2d 306, 309 & n. 1 (Tex.App.1996); Big D Bamboo, Inc. v. Texas, 567 S.W.2d 915, 918, (Tex.App.1978).

. Even if the Administrative Procedures Act did not apply, "Texas law is firmly established that, when the statute fails to prescribe such a time limit, an appeal must be taken within a reasonable time.” Westheimer I.S.D. v. Brockette, 567 S.W.2d 780, 789-90 (Tex.1978) (applying § 11.13(c), the predecessor to § 7.057(d), and citing Railroad Comm’n v. Aluminum Co. of Am., 380 S.W.2d 599 (Tex.1964); Board of Water Eng’rs v. Colorado Mun. Water Dist., 152 Tex. 77, 254 S.W.2d 369 (1953); Midas Oil Co. v. Stanolind Oil & Gas Co., 142 Tex. 417, 179 S.W.2d 243 (1944); and Harkness v. Hutcherson, 90 Tex. 383, 38 S.W. 1120 (1897)).

. Bush v. Viterna, 795 F.2d 1203, 1209 (5th Cir.1986).

. See McMillian v. Monroe County, Alabama, 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ("A court’s task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.’ " (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989))).

. Id. at 786, 117 S.Ct. 1734; Jett, 491 U.S. at 737, 109 S.Ct. 2702 ("[W]hether a particular official has 'final policymaking authority’ is a question of state law" (internal quotation omitted)); Pembaur v. Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("[Wjhether an official had final policy making authority is a question of state law.”); Bush, 795 F.2d at 1209 (stating that the identify of the responsible state actor “will usually be answered exclusively by reference to state law and practice”).

. McMillian, 520 U.S. at 786, 117 S.Ct. 1734 ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official’s functions under relevant state law.”); Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 n. 5, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) ("[The] federal question can be answered only after considering the provisions of state law that define the agency's character.”).

. Bush, 795 F.2d at 1209.

. Tex. Educ.Code Ann. § 21.211(a)(1) ("The board of trustees may terminate term contract and discharge a teacher at any time for ... good cause as determined by the board....”).

. Id. § 21.259.

. The Texas Supreme Court recognized this seminal fact in Montgomery Independent School District v. Davis, when it wrote in the context of a contract renewal case, "the Board retains the authority to make the ultimate decision of whether to renew a teacher's contract.” 34 S.W.3d 559, 565 (Tex.2000). Likewise, § 21.211(a)(1) makes clear that the board retains the exclusive authority to determine whether to terminate a teacher’s contract for cause.

. The LISD, echoing the dissent to the panel opinion, asserts that Texas law separates the responsibility for providing a due process hearing from the responsibility for making termination decisions. The text of the Texas statutory scheme does not support this assertion. It is true that under the statutory scheme the function of appointing a hearing examiner has been given to the Commissioner, Tex. Educ.Code Ann. § 21.254, and that the function of gathering evidence, making findings of facts, and recommending conclusions of law has been given to an appointed hearing examiner, id. § 21.257. But the school board retains the exclusive duty to "consider the recommendation and record of the hearing examiner” and "shall allow each party to present an oral argument” before rendering its decision on whether there is cause to terminate and whether to discharge an employee. Id. § 21.258. In reaching such a decision, the school board has authority to make its own conclusions of law, including the crucial determination of whether there is cause to discharge. See id. § 21.259(b) (The school board "may adopt, reject, or change the hearing examiner's ... conclusions of law.”). It "may reject or change a finding of fact made by the hearing examiner” that is not supported by "substantial evidence.” Id. § 21.259(c).

. See, e.g., Zinermon v. Burch, 494 U.S. 113, 135, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("Because petitioners had state authority to deprive persons of liberty, the Constitution imposed on them the State’s concomitant duty to see that no deprivation occur without adequate procedural protections.”).

. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 & n. 8, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citing Goss v. Lopez, 419 U.S. 565, 583-84, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and Gagnon v. Scarpelli, 411 U.S. 778, 784-86, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). Both the employer and the employee benefit from this opportunity, for it ensures that the decision maker reaches an accurate decision. Id. It thus protects persons "not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.” Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

. Tex. Educ.Code Ann. § 21.258(b); see also Londoner v. Denver, 210 U.S. 373, 386, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) ("[A] hearing in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal.”), cited in Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 16 n. 17, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

. See Tex. Educ.Code Ann. § 7.057(d).

. Judge Jones mistakenly claims that the majority decides an issue that was not properly before the en banc court. Whether the LISD or the Commissioner caused the due process violation has been the ultimate, concrete issue throughout the long history of this case. Accordingly, in answering the causation question, the opinion does nothing more than properly exercise the court’s duty "to enunciate the law on the record facts.” See Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972); see also Phillips v. Monroe County, Miss., 311 F.3d 369, 376 (5th Cir.2002) ("We may affirm the district court's decision on any grounds supported by the record.”).